JOHN H. WOLPERS, MRS. JOHN H. WOLPERS, JOHN C. CORRIGAN, MRS. F. M. KINDER, GRACE WOLPERS STANARD, CORA NANCE WILSON, ROBERT M. WOLPERS, JOHN ALAN WOLPERS, ROSE M. SARACINI, ROBERTS V. STANARD, GERALDINE MENGEL, HENRY M. WOLPERS, DOROTHY WOLPERS McFALL, JAMES HENDRICKSON, BLANCHE BOYD WOLPERS, F. P. JACOBS, Co-partners, doing business under the firm name and style of POPLAR BLUFF PRINTING COMPANY, v. UNEMPLOYMENT COMPENSATION COMMISSION OF MISSOURI, and E. J. KEITEL, HARRY P. DRISLER and GEORGE A. ROZIER, Members, and BUENA W. DOTY, Appellants.—No. 39318.—186 S. W. (2d) 440.

Division Two, March 5, 1945.

Rehearing Denied, April 2, 1945.

*Edward D. Summers,* Acting Chief Counsel, and *John F. Sloan,* Assistant Counsel, for appellants; *George A. Rozier* of counsel.

1068

*Tedrick & Tedrick* for respondent.

BOHLING, C.—The issue here is whether one having a communicable hazardous disease, tuberculosis, is "able to work and available for work" within the meaning of the Unemployment Compensation law (Sec. 9430, (c), R. S. 1939) and therefore eligible to receive benefits thereunder. The Unemployment Compensation Commission's award to the claimant was reversed and the cause remanded upon review by the circuit court and the case is brought here for adjudication. Trianon Hotel Co. v. Keitel, 350 Mo. 1041, 1045, 169 S. W. 2d 891, 893[2, 4]. We think the circuit court was right.

Buena W. Doty instituted the proceeding before the Unemployment Compensation Commission on April 2, 1943. Claimant had been employed as a linotype operator for sometime by a co-partnership composed of John H. Wolpers and others, doing business at Poplar

Bluff, Missouri, under the firm name and style of Poplar Bluff Printing Company, respondents here. Claimant voluntarily quit her employment September 5, 1942, upon being advised she had tuberculosis. She went to the State of California and there was told she was suffering from bronchitis bordering .on tuberculosis and not from tuberculosis. She was advised to rest. She returned to Poplar Bluff. The local chapter (or chapel) of the Union, upon receiving reports that claimant contemplated returning to work and affording claimant an opportunity, notified her she no longer was entitled to her priority because of her failure to produce a certificate that she was physically fit to work. The chairman of the chapel, about 3 or 4 weeks later, advised claimant that this action had been revoked because "the chapel had no authority." under the by-laws to take such action. Claimant worked intermittently for the Peerless Brief Printers from January to August, 1943, when she became regularly employed there. However, in November, 1943, the Peerless Brief Printers sold their business. In these circumstances the Unemployment Compensation Commission, on March 2, 1944, determined that claimant was entitled to .receive benefits under the Unemployment Compensation law; finding claimant "is able to work, and is available for work." In making the award the Commission assumed that claimant had tuberculosis.* The case is presented on the theory tuberculosis is a communicable hazardous disease.

 Section 9430, (c), R. S. 1939, provides: "An unemployed individual shall be. eligible to receive benefits with respect to any week only if the Commission finds that . . . (c) He is able to work, and is available for work."

We think the case may turn upon claimant's being "available for work", one of the ·constitutive elements to be established by substantial probative evidence by claimant under Sec. 9430, (c), as the condition to an award of benefits. The litigants treat the word available, in the phrase "available for work," as meaning "capable of being used to accomplish a purpose, usable"; "ready, handy, convenient, usable, obtainable."· See Webster's New International Dictionary, 2d Ed.

Haynes v. Unemployment Compensation Comm. (Nov. 6, 1944), 353 Mo. 540, 183 S. W. 2d 77, held an employee, a married woman, was "unavailable for work" and ineligible for benefits under the act where she voluntarily left her employment on account of a nervous condition

---

*We quote that portion of the award:

"In reaching this conclusion, we have assumed, without deciding, that claimant has tuberculosis, an infectious disease, and that her employment might constitute a hazard to the health of other workers. However, much we may approve employer's evident inclination to protect the health of its workers, we cannot require the statute so as to expand the meaning of 'available for work' to include a condition of freedom from infectious disease. Such a correction is a matter for the Legislature's consideration."

on the advice of a physician and, although she professed a willingness to work, refused on account of her physical condition to return to her former work or to accept other less exacting work which, however, subjected one to a nervous strain, on the theory the employee had so restricted the type of work she was willing to accept as to make herself unavailable for work. We call attention to a number of earlier cases on the issue of availability for work there reviewed (1. c. 81): "Claims for unemployment benefits have been denied on the theory that the unemployment claimant was not 'available for work,' (1) where claimant could not, because of her children, continue to work on the third shift at a factory even though she could have worked on the first or second shifts (Judson Mills v. South Carolina Unemployment Compensation Commission, 204 S. C. 37, 28 S. E. 2d 535); . . . (3) where claimant, being particularly susceptible to colds, could not continue to work in a room subject to drafts which did not affect other employees (Brown-Brockmeyer Co. v. Board of Review, 70 Ohio App. 370, 45 N. E. 2d 150, 155); . . . (5) where claimant, an embroidery machine operator and a home worker for a garment company, followed her husband from New York to Washington, D. C., and because of her child could not accept factory employment, when it was impossible to secure home employment (Salavarria v. Murphy, 266 App. Div. 933, 43 N. Y. S. 2d 899); (6) where claimant because of pregnancy had withdrawn from the labor market (Steinberg v. Miller, 263 App. Div. 916, 32 N. Y. S. 2d 197) . . . " The case of Board of Review v. Mid-Continent Petroleum Corp. (Okla.), 141 Pac. 2d 69 held: "An individual who ceases work by reason of a labor dispute or strike against his employer is ineligible for benefits under the Oklahoma Unemployment Compensation law of 1936, so long as he participates in such dispute and remains out of employment by reason thereof."

These holdings sufficiently indicate controversial issues between an employee and an employer under the act are not determinative solely upon the will, desire, or whim of one of the disputants but like other controversial matters call for an adjudication upon the facts in harmony with the applicable principles of law. The Missouri Unemployment Compensation law states in express terms its purpose, the declared public policy of the state in its enactment and a guide for its interpretation and application. (Sec. 9422, R. S. 1939, as amended, Laws 1941, p. 566, Sec. 1,* quoted in the margin.) It ▮▮▮ is to the

*Section 9422 in full reads: "As a guide to the interpretation and application of this law, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state resulting in a public calamity. The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for compulsory setting aside of unemployment re-

effect that: ''Economic' insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this State resulting in a public calamity''; that ''the public good and the general welfare'' require a law ''under the police powers'' for compulsory ''unemployment reserves to be used for the benefit of persons unemployed who are entitled to benefits under the provisions of this act''; and that the law is to be liberally construed ''to promote security against unemployment.'' One wholly incapacitated for work by a disease is clearly unavailable for work within Sec. 9430. One suffering from a communicable hazardous disease and deprived of employment by reason thereof while yet physically capable of some work arouses the sympathy of others. The relief in either instance partakes of the nature of disability insurance or some other form of assistance, not unemployment compensation. It is not occasioned by unemployment as 'such. The unemployment is incident to the disease, which is peculiar to the individual afflicted therewith. It is not within the provisions of the Unemployment Compensation law when viewed in the light of the declared public policy of the state and the declared purposes of the law itself. To reinstate one having a communicable hazardous disease after once voluntarily leaving work on account thereof would be a more serious menace to the public health, morals, and welfare than the mere unemployment of the individual afflicted; would not promote security against unemployment and would create an unnecessary hazard to other employees in exposing them to the hazardous disease. If a policy of reinstating former employees while afflicted with a communicable hazardous disease be pursued, its tendency would be to create unnecessary and additional unemployment through the spread of the disease to healthy employees and eventually a refusal of healthy employees to thus unnecessarily subject themselves to exposure to such a hazard. Many enactments are to be found in our statutes for the safeguarding and promotion of the safety, the health, the working conditions and the convenience of employees. To rule that one having a communicable hazardous disease is available for work would conflict with this declared and effective policy of the state as well as the declared policy and purpose of the Unemployployment Compensation law. Far greater ''public calamity'' would result from the reinstatement of such an employee than the disadvantage resulting from the unemployment to the individual afflicted by the hazardous disease. It is the public's welfare, not the individ-

serves to be used for the benefit of persons unemployed who are entitled to benefits under the provision of this act. This law shall be liberally construed to accomplish its purpose to promote security against unemployment both by increasing opportunities for placements through the maintenance of a system of public employment offices and in providing for the payment of compensation to individuals in respect to their employment through the accumulation of reserves.''

ual's, that justifies an exercise of the police power of the State. It is not within the letter or the spirit of the law to hold a person afflicted with a communicable hazardous disease is "available for work" so as to permit such an individual to force himself, if able to work, upon his fellow employees while thus afflicted.

The Unemployment Compensation Commission, as stated, assumed that claimant had a communicable hazardous disease. This assumption is in accord with the record as we read it although some mention is made that there was substantial evidence that claimant was free from the disease. Claimant had the burden of proof on the issue. The scintilla of evidence rule does not obtain in Missouri. Haynes v. Unemployment Comp. Comm., 353 Mo. 540, 183 S. W. 2d 77, 80[1]; Kresge v. Unemployment Comp. Comm., 349 Mo. 590, 594[1], 162 S. W. 2d 838, 840[3-5], citing cases. Dr. J. Lee Harwell gave testimony concerning a sputum examination. He stated he did not make the examination; that the report showed the test was "negative"; and that this did not mean claimant was free from tuberculosis. If it had showed positive, it would mean she had tuberculosis. The other evidence relied upon was a letter from a physician in California. We need not further detail this evidence. It was not of substantive probative value and the Unemployment Compensation Commission correctly based its ruling on an assumption claimant had tuberculosis.

Our view of the case is that there is no substantive evidence of record to sustain the award and that the award was made upon an erroneous theory of the law. In either event, it may not stand.

The judgment is affirmed. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.