## POPLAR BLUFF PRINTING CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 13039.

Circuit Court of Appeals, Eighth Circuit.

June 20, 1945.

Allen L. Oliver, of Cape Girardeau, Mo. (O. A. Tedrick and L. E. Tedrick, both of Poplar Bluff, Mo., and R. B. Oliver, Jr., of Cape Girardeau, Mo., on the brief), for petitioner.

Carlton Fox, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Miriam Lashley, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before GARDNER, JOHNSEN and RIDDICK, Circuit Judges.

GARDNER, Circuit Judge.

This is a petition to review a decision of the Tax Court of the United States affirming a determination of the Commissioner assessing income taxes against petitioner as an association for the years 1939, 1940 and 1941. The controversy revolves about the question as to whether petitioner is an "association" within the meaning of Section 3797(a) (3) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code § 3797(a) (3).

Petitioner was organized as a corporation in 1916 by J. H. Wolpers, who became its principal stockholder. During the taxable years involved it published a daily and two weekly newspapers and in connection therewith owned and operated a printing plant, with an office supply department. In 1923 the capital stock was increased from $5,000 to $30,000, divided into 300 shares with a par value of $100 per share, and 240 shares were issued and outstanding at the close of 1936. About December 30, 1936, the stockholders voted to dissolve the corporation and concurrently with that action entered into a written contract as follows:

"We, the undersigned owners and shareholders of the Poplar Bluff Printing Com-

pany, having dissolved the corporation known by that name, in accordance with the laws, and having decided to carry on said business as a partnership under the trade name of Poplar Bluff Printing Company, do hereby agree as follows, to-wit:

"1st. That J. H. Wolpers shall be the managing executive of said company.

"2nd. That all real estate formerly owned by the corporation shall be held in the name of the said J. H. Wolpers as Trustee for the said Poplar Bluff Printing Company, a copartnership.

"3. That the said J. H. Wolpers shall cause to be issued to each of the copartners, negotiable certificates, setting out the interest of each of the undersigned, and each of the undersigned hereby agrees to be bound thereby as to the extent of the ownership of each of the parties hereto.

"4th. It is further mutually agreed between all of the parties hereto that should any copartner other than the said J. H. Wolpers desire to dispose of his interest in said copartnership, such partner will first offer to the said J. H. Wolpers his interest in said partnership at such price as may be available to said partner from others and the said J. H. Wolpers agrees to at any time purchase the interest of any other partner at whatever price the inventory last available shows such interest to be worth, according to the books and records of said copartnership, and that the said J. H. Wolpers shall have the first option to buy the interest of any other partner who desires to sell at any other price, and these rights shall extend to the heirs of the said J. H. Wolpers in case of his death.

"That none of the partners shall be required to bear or pay any of the liabilities of this partnership so long as there exists any property of the partnership unliquidated.

"This agreement made and entered into on this 30th day of December, A. D. 1936."

Upon the execution of this agreement certificates were issued to the stockholders of the dissolved corporation in the following form:

"No.——        ——Shares
"A Co-Partnership
"Poplar Bluff Printing Company
"Poplar Bluff, Missouri

"This Certifies That —— is a copartner in the Poplar Bluff Printing Company and is the owner of —— interest in the 240 assets and profits in said Partnership.

"In Witness Whereof, the said Partnership has caused this Certificate to be signed by its Executive Officer and General Manager, this —— day of —— A.D. 19—."

The real estate theretofore owned by the corporation was transferred to J. H. Wolpers, trustee, but no formal bill of sale seems to have been executed conveying the personal property. Following dissolution of the corporation, petitioner continued operating the newspaper plant without any substantial changes. New books were opened and the total surplus and capital of the old organization became the new investment of the partnership. The business operated under the same name. No new capital was contributed to the business and the certificates evidencing ownership were issued to the former stockholders in exact proportion to their prior holdings. J. H. Wolpers continued as managing executive during the tax years involved. He was also editor of the newspapers. The business was organized into several departments, each of which was under the management of one of the former stockholders. Only the general manager was authorized to draw checks on the bank account in which the petitioner's funds were kept under the name of Poplar Bluff Printing Company. Employees were paid weekly salaries, and net earnings, except for a reserve fund, were distributed annually to certificate holders of record in proportion to their holdings. The Tax Court found that it was necessary at all times to maintain close co-ordination among departments, and frequent meetings of department managers and employees were held for that purpose. Management of the business was centralized in the general manager and heads of the several departments. The Tax Court also held that, "The continuity of the enterprise was not affected by the transfer of beneficial interests. The only restriction on such transfers was that any holder desiring to dispose of his interest must first offer it to J. H. Wolpers." Both during and after petitioner's incorporation the business was run for the most part by J. H. Wolpers.

Section 3797 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3797, under the title of "Definitions," contains the following:

1018

"(a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof * * *

"(3) Corporation. The term 'corporation' includes associations, joint-stock companies, and insurance companies."

Section 181, 26 U.S.C.A. Int.Rev.Code § 181, provides: "Partnership not taxable. Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity."

█ It is the contention of petitioner that when the corporation was dissolved its stockholders formed a partnership for the purpose of editing and publishing the newspapers and maintaining a commercial printing department, and hence it was not taxable as an entity. Counsel stress the fact that in a recent decision of the Supreme Court of Missouri (Wolpers et al. v. Unemployment Compensation Commission, 186 S.W.2d 440) petitioner was recognized by the Supreme Court of Missouri as a co-partnership. We think it can not fairly be said that the Supreme Court of Missouri passed upon the question of the character of petitioner's entity. The question was not involved in that litigation. The status of a particular entity under the state law is not controlling in determining whether it is subject to Federal tax. An unincorporated association, though a partnership under state law, may nevertheless be included within the term "corporation," within the definition of the revenue law. Burk-Waggonner Ass'n v. Hopkins, 269 U.S. 110, 46 S.Ct. 48, 70 L.Ed. 183; Hecht v. Malley, 265 U.S. 144, 44 S.Ct. 462, 68 L.Ed. 949; Wholesalers Adjustment Co. v. Commissioner of Internal Revenue, 8 Cir., 88 F.2d 156. In Burk-Waggoner Assn. v. Hopkins, supra [269 U.S. 110, 46 S.Ct. 49], it is said: "The term partnership as used in these sections obviously refers only to ordinary partnerships. Unincorporated joint-stock associations, although technically partnerships under the law of many states, are not in common parlance referred to as such."

In Morrissey v. Commissioner of Internal Revenue, 296 U.S. 344, 56 S.Ct. 289, 295, 80 L.Ed. 263, the court, among other things, said: "The inclusion of associations with corporations implies resemblance; but it is resemblance and not identity. The resemblance points to features distinguishing associations from partnerships as well as from ordinary trusts. As

we have seen, the classification cannot be said to require organization under a statute, or with statutory privileges. * * * Thus unincorporated joint-stock companies have generally been regarded as bearing the closest resemblance to corporations. But, in the revenue acts, associations are mentioned separately and are not to be treated as limited to 'joint-stock companies,' although belonging to the same group. While the use of corporate forms may furnish persuasive evidence of the existence of an association, the absence of particular forms, or of the usual terminology of corporations, cannot be regarded as decisive."

Treasury regulations promulgated under the Internal Revenue Code reflect the administrative interpretation of the term "association." Referring to Section 3797 the regulations read in part as follows:

"For the purpose of taxation the Internal Revenue Code makes its own classification and prescribes its own standards of classification. Local law is of no importance in this connection. * * * The term 'corporation' is not limited to the artificial entity usually known as a corporation, but includes also an association, a trust classed as an association because of its nature or its activities, a joint-stock company, an insurance company, and certain kinds of partnerships. * * *

"The term 'associations' is not used in the Internal Revenue Code in any narrow or technical sense. It includes any organization, created for the transaction of designated affairs, or the attainment of some object, which, like a corporation, continues notwithstanding that its members or participants change, and the affairs of which, like corporate affairs, are conducted by a single individual, a committee, a board, or some other group, acting in a representative capacity. * * * If the conduct of the affairs of a corporation continues after the expiration of its charter, or the termination of its existence, it becomes an association."

█ The petitioner was not organized to wind up the business of the corporation, but to carry on that business, and this it did without any apparent substantial change. It bore the same name, had the same owners, the same executive officer and the same employees. It resembled in many ways a corporation. Those who had been stockholders in the corporation became owners of certificates of shares cor-

responding to the certificates of stock in the corporation which they had surrendered. Like certificates of stock, these certificates of shares were by the agreement declared to be "negotiable." They were at least transferable to a third person, and unlike a common law co-partnership such a transfer of the interest evidenced by the certificate did not ipso facto result in a dissolution of the partnership, but like a corporation the entity continued. There was centralized control and management as in a corporation. J. H. Wolpers was named in the agreement as the managing executive and the heads of the several departments met from time to time to consult with the managing executive, these department heads performing similar functions to directors of a corporation. There were five heads of departments, while there were some twenty owners of the business. Under the agreement there was to be no current sharing of losses, which is an incident of an ordinary partnership. Under the agreement here, if the company made net profits these were to be paid out in salaries, operating expenses and dividends. But if operation should result in losses, then the certificate holders were not required to bear them "so long as there existed any property of the partnership unliquidated." In other words, as between the owners any certificate holder could require that the partnership property be liquidated and applied to losses before he could be called upon to contribute. This is inconsistent with ordinary partnership contracts. Absolute immunity from personal liability is not a necessary prerequisite to the existence of an association as defined by the Internal Revenue Code. Bert v. Helvering, 67 App.D.C. 340, 92 F.2d 491; Fidelity-Bankers Trust v. Helvering, 72 App.D.C. 1, 113 F.2d 14. The ownership of a certificate, like the ownership of a share of stock, entitled the owner to receive dividends.

In an ordinary co-partnership each partner represents his fellows, and within the scope of the common enterprise may by his acts impose liability upon them. When, however, the associates so organize themselves that no representative action may normally be taken except by elected officials, the association has taken on qualities of a corporation, as distinguished from a co-partnership. Under the agreement here considered, the individual associate did not represent his fellows and it was not contemplated that his acts would impose liability upon his associates. This could only be done by the managing executive.

The Tax Court is a fact-finding body. It is not only authorized to find facts but to base inferences and conclusions upon the facts and circumstances found. The facts and circumstances here may not have been such as to compel a finding that petitioner resembled an association rather than an ordinary partnership, but we think they warranted such conclusion, and we can not say that the inference drawn by the Tax Court was clearly erroneous. The determination of the Tax Court is therefore affirmed and the petition to review is dismissed.