## Elkhorn & Jellico Coal Co. v. Kentucky Unemployment Compensation Commission et al.

June 17, 1949.

Elwood Rosenbaum and C. X. Johnson for appellants.

Val J. Mitch, Fox & Gordon and Samuel H. Cole for appellees.

OPINION OF THE COURT BY CLAY, COMMISSIONER—
Reversing.

We have before us, in a representative suit, an appeal from a judgment of the Franklin Circuit Court dismissing appellants' petition for review of an Unemployment Compensation Commission ruling. The controversy involves the right of striking coal miners to receive unemployment compensation in those cases where their employers failed to notify the Commission in writing that a strike or labor dispute existed. The Commission's decision, affirmed by the Circuit Court, recognized the claims of the striking employees; declared the strike periods constituted valid weeks of unemployment which entitled them to the benefits provided in KRS, Chapter 341; and determined that such benefits constituted proper charges against the reserve accounts of such employers.

On April 1, 1946, and later on November 20, 1946, a "work stoppage" became effective in most of the coal mines of Kentucky. In that year this "stoppage" was nation-wide and arose because the United Mine Workers and the coal operators could not agree on a new contract. Though it was contended at one time that the miners were not really striking, there is no question a significant labor dispute existed.

The controlling statute involved undertakes to disqualify those claimants for unemployment compensation whose loss of employment is the result of a strike or bona fide labor dispute. KRS 341.360, insofar as pertinent here, provides as follows (our italics):

"No worker may serve a waiting period or be paid benefits for any week of unemployment with respect to which the commission *finds* that:

"(1) A strike or other bona fide labor dispute which caused him to leave or lose his employment is in active progress in the establishment in which he is or

was employed, except that waiting periods *may be served* and benefits *may be paid* unless the employer notifies the commission in writing within seven days after the beginning of such alleged strike or labor dispute of the alleged existence of such strike or labor dispute.''

A number of Kentucky employers notified the Commission regarding the labor dispute, as provided in the above statute. Their employees were denied benefits by the Commission. The representative appellants in this case failed to give the required notice, and solely because of that failure, the Commission allowed their employees unemployment compensation. The issue is whether the Commission *must* pay benefits to those employees in the latter class or whether the Commission may, and in the exercise of a reasonable discretion should, deny such benefits if it has independent knowledge of the existence of a strike or labor dispute.

Appellees cite a number of authorities to the effect that where a statute relating to the duties of public officers contains provisions for the protection of public or private right, a permissive power granted should be construed as mandatory. See 50 Am. Jur., Statutes, Sections 34 and 35; Elam v. Salisbury, Mayor, et al., 180 Ky. 142, 202 S. W. 56. On the other hand, it is generally recognized that permissive terminology will not be interpreted as mandatory unless the sense, purpose, or policy of the statute clearly requires it. See 50 Am. Jur., Statutes, Sections 30 and 31; Ocean Accident & Guarantee Corporation v. Milford Bank et al., 236 Ky. 457, 33 S. W. 2d 312; Farmers & Merchants' Bank of Monroe, North Carolina, et al. v. Federal Reserve Bank of Richmond, Virginia, 262 U. S. 649, 43 S. Ct. 651, 67 L. Ed. 1157, 30 A. L. R. 635.

The original Unemployment Compensation Act, enacted in 1938, provided that an employee should not be eligible for benefits if he had left his employment because of a strike or other bona fide labor dispute. Section 4748g—9(b), Carroll's Kentucky Statutes, April 1939 Supplement. There were no exceptions, although this section declared a lockout should not be deemed a strike or labor dispute. No provision was made for notice to the Commission.

It thus appears the Legislature initially adopted

as an integral part of this law a policy to disqualify those unemployed persons who by voluntary joint action quit their employment for the purpose of improving their bargaining position or obtaining a better contract with their employer. The reasonableness of this policy seems apparent. As stated in Barnes v. Hall, 285 Ky. 160, 177, 146 S. W. 2d 929, 937:

"The purpose of the act was to provide employment for those unfortunate victims of a maladjusted economy who are unable to obtain suitable work at a living wage—not to enable those who are offered continuation of an existing employment to refrain from work until they have secured advantages in addition to those previously enjoyed."

In 1940 the Act was amended to provide for notice from the employer as set out in the section of the statute quoted above. Nothing in this amendment indicates a change of the Legislature's dominant intent that persons unemployed by reason of a strike or labor dispute should be disqualified from receiving benefits. The requirement of notice apparently was added to facilitate the administration of the Act. Under the original provision, it is conceivable the Commission may have paid claims in violation of the law simply because it had no notice of the claimant's ineligibility. It appears to us the exception in the amended section, to the effect that benefits "may be paid" where the employer's notice is not given, was designed to protect the Commission and the employee in the event such payments were made without due proof that the basis of disqualification existed.

In a dissent to the Commission's order, Charles M. Russell, Associate Director, pointed out that an advisory council committee had recommended the 1940 amendment to save the Commission time and effort in passing on claims, and to relieve it of embarrassment in the event employees disqualified because of a labor dispute were inadvertently paid benefits.

The Commission itself seems to have construed the change effected in 1940 as intended to secure *information* upon which to base a determination as to whether or not claimants were disqualified under this section. In 1942 it adopted Regulation No. 13, expressly to supplement the notice required under KRS 341.360, which required em-

ployers to furnish a list of names and social security numbers of all workers in their establishments whose unemployment was caused by an alleged strike or labor dispute. In this same regulation the Commission also required employers to notify the Commission of the termination of such strike or labor dispute. We do not undertake to pass on the reasonableness of this regulation, and there is some indication in the record that it has greatly increased the paper work of the Commission. However, it does indicate the Commission construed the notice provision of the statute as designed to furnish *evidence* of the disqualifying condition.

Turning back to the section in controversy, it clearly contemplates a *finding* that a strike or bona fide labor dispute exists. It is argued that even though the Commission finds such fact, it still must pay benefits to employees simply because their employers have failed to give the written notice. This seems a highly artificial construction of the language used. It overlooks the dominant intent of the law that workers out of employment under these circumstances shall, as a matter of policy, be disqualified. It clothes a requirement for notice with a significance wholly unrelated to the other provisions of the statute. Surely no one would contend that the mere giving of notice by the employer would be *conclusive* as to the existence of a strike or labor dispute. If the employee denied its existence, clearly the Commission must make an independent finding with respect to this basic fact. If then such a notice is not conclusive in the employer's favor, the lack of it should not be conclusive against him.

It is argued the notice requirement is reasonable and the employer should be required to pay for his negligence if he fails to furnish it. This reasoning ignores the fact that the employer's reserve account from which these benefits are to be paid is financed by taxes levied on the employer, and they should only be disbursed when clearly required by the terms of the taxing statute. See Unemployment Compensation Commission et al. v. Savage et al., 283 Ky. 301, 140 S. W. 2d 1073. The argument fails to recognize that the public has an interest in the proper disbursement of these funds and its economic effects. In addition, it appears unfair and un-

reasonable that a great multitude of employees in the same category should receive no compensation where notice was given and others working in the same industry, in the same vicinity, governed by the same contract, and out of work for the same reason should enjoy benefits simply because a particular notice, which we will assume unnecessary, was not given. As stated by Associate Director Russell in his dissent heretofore referred to:

"It is neither fair nor just that in nationwide labor disputes such as these the employees of one coal company should be allowed benefits while the employees of an adjoining coal company should be denied benefits, when both companies are located in the State of Kentucky and governed by the same law, when all employees are out of work for the identical reason, simply because of some act that one employer did or omitted to do. It is inconceivable to the undersigned that the Legislature intended that such an absurd result be reached."

It is our conclusion that the fundamental purpose of KRS 341.360 was to prohibit benefit payments to those employees who had left their employment because of a strike or bona fide labor dispute; that the employer's notice required by that section was evidentiary in character; and that the Commission was not required to pay benefits in the absence of such notice if other evidence clearly established the existence of the disqualifying fact.

Appellees in their briefs do not deny that in the particular cases before us the Commission had independent proof and knowledge that a strike or labor dispute existed, and the claimants' loss of employment was due solely to this circumstance. Not only was the controversy between the United Mine Workers and the employers a matter of nation-wide interest which was publicized extensively, but the Commission had written notice from a great number of employers (though not from appellants) that a strike existed in the principal coal fields of the state. Perhaps even more significant, the written applications for benefits filed with the Commission by the claimants showed on their face their occupation as miners, and the reason for their separation from employment as a "labor dispute."

In these particular cases, it is evident the Commission had actual knowledge of the facts, and abundant proof, without notice from appellant employers, upon which to base a finding that a strike or labor dispute was in active progress and caused the claimant employees to leave or lose their employment. The notice from the appellant employers could have added little, if anything, to the information already possessed by the Commission. Such being the case, the Commission was definitely not required to allow benefits to these employees, and in view of their disqualification under the dominant policy of KRS 341.360, benefits should not have been paid. These payments therefore were improperly charged to the employers' reserve accounts.

It is unnecessary to discuss the point raised by appellants that the appellee employees were ineligible for benefits because they were not available for suitable work as provided in KRS 341.350.

For the reasons stated, the judgment is reversed for proceedings consistent with this opinion.