UNEMPLOYMENT INSURANCE COMMIS-
SION of Kentucky, Appellant,

v.

COCHRAN FOIL COMPANY, Appellee.

Court of Appeals of Kentucky.

Feb. 5, 1960.

Paul E. Tierney, Samuel H. Cole, Lynn T. Mitchell, Frankfort, for appellant.

Earl Wilson, Bullitt, Dawson & Tarrant, Louisville, for appellee.

CULLEN, Commissioner.

On this motion for an appeal some troublesome questions of interpretation of the Unemployment Compensation Act, KRS Ch. 341, are presented.

Mrs. Rebecca Kistner presented a claim for unemployment insurance benefits. The Unemployment Insurance Commission entered an order allowing the claim, payable from the reserve account of Mrs. Kistner's most recent employer, the Cochran Foil Company. On proceedings for judicial review the circuit court set aside the order and entered judgment holding that Mrs. Kistner was not entitled to any unemployment insurance benefits and that the Commission could not award her any benefits from either the employer's reserve account or the pooled account. The basis for the judgment was that Mrs. Kistner had "voluntarily quit her employment without good cause." The Unemployment Insurance Commission has moved for an appeal.

Mrs. Kistner had worked for the Cochran Foil Company in Louisville, under a union contract, for some 16 months prior to March 17, 1952. On that date she was laid off pursuant to a general reduction of force. She continued in the laid-off status throughout the balance of the year 1952 and did not apply for unemployment insurance benefits. In January 1953 her husband was transferred by his employer from an office in Louisville to an office in Texas. Mrs. Kistner did not immediately move to Texas with him, it being her initial intention to stay in Louisville at least until the current school year was completed.

In February 1953 Mrs. Kistner made inquiry at the plant of the Cochran Foil Company as to the prospects for her being returned to work. She was given no assurance of a return in the immediate future. Shortly thereafter she moved to Texas to join her husband.

On March 20, 1953, the Cochran Foil Company notified Mrs. Kistner, in accordance with the union contract, that they were calling back some of the laid-off workers and that she could resume work. She refused to return to Louisville and resume her job. Shortly thereafter, invoking procedures that were available by reason of reciprocity statutes and agreements, she filed through the Texas Unemployment Commission, as agent for the Kentucky Commission, her claim for unemployment insurance benefits. Under the Unemployment Compensation Law this claim could be only for weeks of unemployment occurring after the claim was filed, because the law does not provide for the receipt of any benefits for a period of unemployment preceding the date of the filing of a claim.

The first question to be considered is whether Mrs. Kistner is entitled to receive any benefits chargeable to the reserve account of the Cochran Foil Company. The applicable statute, KRS 341.-530(3), provides in substance that benefits are not chargeable against the employer's reserve account if the employe "voluntarily left his most recent work with such employer without good cause attributable to the employment." So our question is whether Mrs. Kistner's conduct brought her within the quoted phrase.

It seems to us that the question can be approached only from the standpoint of the

employe's status immediately preceding the application for unemployment benefits. If at that time the employe is in a laid-off status, there is no bar to the charging of benefits against the employer's reserve account. Likewise, if at that time he is in the status of having terminated his employment because the prospect of an indefinite lay-off is facing him, it would seem reasonable to conclude that the termination was for a "good cause attributable to the employment" and therefore such as to present no bar to a charge against the reserve account. But if, at the time he seeks unemployment benefits, he is in the status of having refused for personal reasons to continue his employment status in an available job of work with his most recent employer, then he must be considered to come within the clause of KRS 341.530(3) that precludes the charging of the reserve account.

This reasoning would seem to be consistent with the apparent philosophy of the Unemployment Compensation Act. The employer has an obligation to continue to provide suitable work under satisfactory working conditions, for his employes. If he fails to do so, his reserve account should be chargeable. But if, after a period of failure to provide continuing work, he again offers continuing work, and the employe waits until after the offer of continuing work has been made before terminating his employment and seeking unemployment benefits, there is no reason to impose a charge on the employer's reserve account.

Here, Mrs. Kistner did not seek unemployment benefits during the lay-off period. Nor did she quit her job during that period and seek other employment. On the contrary, she elected to wait until after the offer to resume work was made, and then she rejected it and terminated her employment.

It is suggested in argument that Mrs. Kistner, in effect, quit her job when she moved to Texas, and that there was good cause for her to quit at that time because the company was holding out no prospect of work being available in the reasonable future. But the fact is that she gave no notification to the company of any intention to terminate her employment contract, nor did she perform any other act, until after the offer to return to work had been made, to indicate that she was surrendering her rights under the employment contract. Surely, if the company had taken other employes back in violation of her seniority rights, it would have furnished a feeble defense, in a suit by her for breach of contract, for the company to assert that they assumed she had quit because they had heard a rumor that she had moved to Texas. Until Mrs. Kistner rejected the call back to work the company still considered her to be its employe, and it is clear that the lay-off itself did not terminate the employment. See North Whittier Heights Citrus Ass'n v. National Labor Relations Board, 9 Cir., 109 F.2d 76; Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 65 S.Ct. 1105, 90 L.Ed. 1230.

Even if it should be considered that Mrs. Kistner did quit her job when she moved to Texas, the fact remains that the avowed reason for her quitting was her desire to be with her husband, and not the absence of available work in her employment with the Cochran Foil Company. She had intended to quit in any event at the end of the school year, so at the most the lack of work in February merely accelerated her decision to move to Texas.

We think it is beyond question that the cause for Mrs. Kistner's termination of her employment, namely, her having placed herself, for family reasons, at too great a distance from the place of employment, cannot be considered a cause "attributable to the employment."

Our conclusion is that any benefits to which Mrs. Kistner might be entitled cannot be charged against the employer's reserve account, because she left her employment without good cause attributable to the employment. KRS 341.530(3). To

that extent the judgment of the circuit court is correct.

■ The question remains as to whether Mrs. Kistner may be entitled to benefits chargeable to the pooled account. This brings to bear the provisions of KRS 341.-370(1) (b). This statute provides that if a worker has left his most recent suitable work voluntarily without good cause, he shall be disqualified from receiving benefits or serving a waiting period for not less than six nor more than sixteen weeks. This appears to be the only statutory *disqualification* from receiving benefits payable out of the pooled account, by reason of the worker's voluntarily quitting his job without good cause, and it will be observed that the disqualification is not permanent, but only for a maximum period of sixteen weeks. In other words, while the voluntary quitting of a job without good cause may create an absolute bar to the charging of benefits against the employer's reserve account, it is ground only for a temporary disqualification from receiving benefits out of the pooled account.

In this connection it may be noted that even if the situation here had been treated as one in which the employe had quit her job and then had refused a subsequent offer of suitable work from her former employer, the maximum disqualification that could be imposed, under paragraph (1) (a) of KRS 341.370, would be for sixteen weeks.

It will be observed that KRS 341.370(1) (b) refers simply to quitting without "good cause," as distinguished from "good cause attributable to the employment" as used in KRS 341.530(3). So, although it is clear that the quitting of a job by a woman for the purpose of joining her husband at a distant place is not "good cause attributable to the employment," the question remains as to whether it is "good cause" within the meaning of KRS 341.370(1) (b). The authorities seem to be uniform in holding that it is not. See Woodmen of the World Life Ins. Soc. v. Olsen, 141 Neb. 776, 4 N.W.2d 923; Huiet v. Callaway Mills, 70 Ga.App. 538, 29 S.E.2d 106; Stone Mfg. Co. v. South Carolina Employment Security Commission, 219 S.C. 239, 64 S.E.2d 644.

It is our opinion that the quitting of her job, by Mrs. Kistner, for the purpose of joining her husband in Texas, was not for "good cause" within the meaning of KRS 341.370(1) (b), and therefore Mrs. Kistner was subject to the disqualification imposed by the statute. But the disqualification is temporary only, and the circuit court erred in holding that Mrs. Kistner was absolutely barred from receiving any benefits from the pooled account.

The motion for an appeal is sustained and the judgment is reversed to the extent that the judgment holds that there is an absolute bar to the payment of any benefits from the pooled account. On this point, judgment is directed that the employe is subject to disqualification from serving a waiting period or from receiving benefits from the pooled account for a period of not less than six nor more than sixteen weeks, to be determined by the Unemployment Insurance Commission. In all other respects the judgment is affirmed.

MONTGOMERY, C. J., dissents, being of the opinion that the judgment of the circuit court is in all respects correct.