**BROADWAY & FOURTH AVENUE REALTY COMPANY, Appellant,**

v.

**Leona ALLEN et al., etc., Appellees.**

Court of Appeals of Kentucky.

March 23, 1962.

Rehearing Denied March 22, 1963.

S. L. Greenebaum, Charles F. Wood, Greenebaum, Barnett, Wood & Doll and Thomas C. Carroll, Louisville, for appellant.

Christopher C. Frishe, Paul E. Tierney, Legal Section, Dept. of Economic Security, Div. of Unemployment Ins., Frankfort, for appellees.

MONTGOMERY, Judge.

This case was considered with Brown Hotel Company v. Edwards, Ky., 365 S.W. 2d 299, and other cases (decided this day). Involved in each appeal is the question whether compensation benefits paid to a claimant shall be charged to the employer's reserve account or to the Commission's pooled account. The circuit court affirmed the Commission's order approving the referee's award of benefits.

Leona Allen had been employed by the Broadway & Fourth Avenue Realty Company since September 1948 as a maid at the Brown Building. The last day she worked was March 19, 1954.

Leona broke her arm on March 20, 1954. Her injury was not connected with the employment; hence, appellant was not liable for workmen's compensation benefits. Leona reported her injury to her immediate superior and was advised that because of her inability to work she would have to be replaced but that her job would be held ninety days for her. Because Leona was unheard from at the end of that period, her employment was terminated on June 30, 1954.

Leona filed a claim on October 5, 1954, stating that severance from her employment was because of "lack of work." She signed another Commission form on November 4, 1954, and gave as the reason for her separation, "Voluntarily quit." Both statements were made under penalty for false statement. See KRS 341.370(3) for false statement disqualification. Appellant's response was that she voluntarily quit.

On February 18, 1955, Leona testified that she had not worked since March 19, 1954, and had not been able to work until October 1954. She said that she called in to her employer in July and August and was told that there was no place for her. At that time, according to her, her arm was still in a sling. In September 1954, she refused appellant's offer of employment

because she would have had to work under a different supervisor. She made no attempt to obtain other employment.

Appellant urges that the Commission acted without authority or in excess of its authority and not in conformity with the pertinent statutes. The trial court upheld the award made by the Commission, which had refused to relieve appellant's reserve account from the benefits paid. The Commission held that KRS 341.370 prescribing the disqualifications to receive benefits should be construed narrowly and that the facts did not clearly and convincingly show that the claimant voluntarily quit without good cause or was discharged for misconduct.

█ In holding that KRS 341.370 should be construed narrowly against the employer, the Commission was in error. KRS 341.370 stands on a par with KRS 341.350 and KRS 341.530(3). Originally it was provided that the "Act shall be liberally construed to accomplish the purposes thereof." Carroll's Kentucky Statutes, Section 4748g–21. This statute was repealed in 1940. Kentucky Acts 1940, Chapter 191. In Barnes v. Indian Refining Company, 280 Ky. 811, 134 S.W.2d 620, it was held, "As a taxing statute, the limitations of the Act are to be strictly interpreted." In Elkhorn & Jellico Coal Company v. Kentucky Unemployment Compensation Commission, 310 Ky. 674, 221 S.W.2d 640, it was held that "the employer's reserve account from which these benefits are to be paid is financed by taxes levied on the employer, and they should only be disbursed when clearly required by the terms of the taxing statute."

It would seem from the action of the Commission in this and related cases that these decisions have been ignored. The General Assembly in 1958, c. 4 provided that the eligibility requirements of KRS 341.350 and the conditions of benefit disqualifications of KRS 341.370 "shall be strictly construed." This was an embodiment of the existing case law. Accordingly, both statutes should have been construed

strictly as taxing statutes, and the Commission was wrong in its manner of construction. Inasmuch as KRS 341.530(3) concerns the charges made against the employer's reserve account, it, as a taxing statute, also should be construed strictly.

█ The burden was on Leona to establish her claim by proving eligibility under KRS 341.350. Brown Hotel Company v. Edwards, Ky., 365 S.W.2d 299 (decided this day). Further, it was a necessary part of establishing her claim to carry the burden of proving that she did not quit voluntarily without good cause attributable to her employment under KRS 341.530(3). Fannon v. Federal Cartridge Corporation, 219 Minn. 306, 18 N.W.2d 249; John Morrell & Company v. Unemployment Compensation Commission, 69 S.Dak. 618, 13 N.W.2d 498; Henderson v. Department of Industrial Relations, 252 Ala. 239, 40 So.2d 629; Wolpers v. Unemployment Compensation Commission, 353 Mo. 1067, 186 S.W.2d 440; Seroskie v. Unemployment Compensation Board of Review, 169 Pa.Super. 470, 82 A.2d 558.

The Commission concluded that appellant's reserve account was entitled to no relief. Apparently the referee, Commission, and trial court ignored KRS 341.530 concerning employer reserve accounts. Subsection (1) provides for the keeping of a separate reserve account for each employer. Subsection (2) provides that the benefits paid each eligible worker shall be charged to the employer's reserve account excepting the benefits paid under Subsection (3), the pertinent part of which provides:

"Notwithstanding the provisions of subsection (2) of this section, benefits paid to an eligible worker and chargeable to an employer's reserve account under such subsection shall be charged against the pooled account if such worker * * * voluntarily left his most recent work with such employer without good cause attributable to the employment, * * *."

■ The quitting of a job by a woman for the purpose of joining her husband at a distant place is not "good cause attributable to the employment" and was held to preclude charging any benefits paid to the employer's reserve account. Unemployment Insurance Commission v. Cochran Foil Company, Ky., 331 S.W.2d 903. To the same effect, see Kentucky Unemployment Insurance Commission v. Kroehler Manufacturing Company, Ky., 352 S.W.2d 212, wherein it was held that retirement under a voluntary system precluded charging the employer's reserve account.

Other courts have been strict in construing similar statutes. An employee who left her employment because of her pregnancy was barred from receiving any benefits. It was held that she left without good cause attributable to the employment or the employer. John Morrell & Company v. Unemployment Compensation Commission, 69 S.Dak. 618, 13 N.W.2d 498. Benefits were denied an employee when he had to quit work because of colds. It was pointed out that "unemployment compensation is in no sense sick benefits." Brown-Brockmeyer Company v. Board of Review, 70 Ohio App. 370, 45 N.E.2d 152. Unless the ill health or physical infirmity is shown to have resulted from the employment, the employee is disqualified from receiving benefits when he voluntarily leaves his employment on such account. The cause of the quitting must have been connected with the work. Henderson v. Department of Industrial Relations, 252 Ala. 239, 40 So.2d 629. In that case, the claim was filed two days after the employment ended. In State v. Hix, 132 W.Va. 516, 54 S.E.2d 198, three employees left work because of a bladder condition, hypertension, and the possibility of contracting tuberculosis because of dust conditions, respectively. In pointing out that the employers were not at fault in connection with the circumstances which caused claimants to cease work, it was said:

"In whatever way we view this case, claimants are not entitled to benefits. If they were ill and unable to work, they were not eligible to work, and, therefore, not entitled to benefits. If they were eligible to work by reason of being able for full time work, they were disqualified under Section 4(1) of the statute."

See also Wolpers v. Unemployment Compensation Commission, 353 Mo. 1067, 186 S.W.2d 440; Zielinski v. Unemployment Compensation Board of Review, 174 Pa. Super. 244, 101 A.2d 419.

■ Leona is in a similar situation. Section 4(1) of the West Virginia statute contains the "without good cause" provision found in KRS 341.530(3). Under some of the foreign cases, Leona's quitting when she first broke her arm would have constituted a voluntary quitting without good cause attributable to her employment. Certainly her failure to return to work at the end of ninety days or after having been offered suitable employment in September 1954 under KRS 341.370(1) (a) would have constituted a disqualification under the "good cause" statute, KRS 341.530(3).

In Unemployment Insurance Commission v. Cochran Foil Company, Ky., 331 S.W.2d 903, refusal of employment following a lay-off period was deemed a leaving of her employment "without good cause attributable to the employment." In a similar factual situation, where the employee was granted one month's leave of absence on account of her illness and did not re-apply for employment at the end of the month although her former job was open to her, benefits were denied for the same reason. Rivers v. Director of Division of Employment Security, 323 Mass. 339, 82 N.E.2d 1.

Leona failed to sustain the burden of establishing her claim and the Commission was in error in charging appellant's reserve account with the benefits paid. Again, it is appropriate to recall that the question of Leona's entitlement to any benefits is not presented here, although some of the foreign decisions indicate that she would not have been entitled to receive any bene-

fits. It is unnecessary to consider other contentions made.

The motion for an appeal is sustained and the judgment is reversed.

PALMORE, J., concurs in result only.

BIRD, J., dissents.