**James T. LaPLANTE, Plaintiff-Respondent,**

v.

**The INDUSTRIAL COMMISSION of Missouri, June R. Rose, George W. Wise, Charles E. Cates, and the Division of Employment Security of the State of Missouri, Defendants-Appellants.**

No. 31352.

St. Louis Court of Appeals.

Missouri.

April 16, 1963.

Lloyd G. Poole, Gordon P. Weir, Jefferson City, for appellants.

Roberts & Roberts, Charles G. Hyler, Farmington, for respondent.

DOERNER, Commissioner.

This appeal is by the Industrial Commission of Missouri, Division of Employment Security, from a judgment of the Circuit Court of St. Francois County reversing the Commission's denial of unemployment benefits.

The claimant, James T. LaPlante, filed his initial claim for benefits on July 16, 1961, and stated therein that he had quit his employment with the Twin City Packing Company on July 13, 1961. By a determination made on August 4, 1961, the Division's deputy disqualified the claimant for benefits on the ground that the claimant had left his work voluntarily without good cause attributable to his work or to his employer.

Claimant appealed to the appeals tribunal, where a hearing was held before an appeals referee. At the hearing claimant testified that he worked for the Twin City Packing Company for about 16 months prior to July 13, 1961, the day he quit. He worked a 5½ day, 44 hour week. The greater part of the time he worked as a laborer in the Company's slaughter house, but about 2½ hours a day he worked as a truck driver. In connection with the latter

work he loaded his truck with quarters of beef at the Company's slaughter house and drove it about 5 blocks to his employer's locker plant, where he unloaded it. On July 31, 1960, he injured his back at work ("slipped a disc" as he expressed it) and thereafter he was continuously under the care of first one, and then another, chiropractor and was forced to wear a brace for his back. He lost time from his work because of his injury. The quarters of beef weighed as much as 200 pounds each. He weighed only 145 pounds, and the work was too heavy for him and affected his back. Most of the time he had no help in loading or unloading the truck, and there was no equipment to help him in such work. Right after his back was hurt he complained to Earl Bayer, manager of the slaughter house and his immediate superior, that the work was too hard and asked to be put on a patty machine or anything else; but Bayer said, "that is your job, you are assigned to it." He repeatedly asked Bayer for other work but none was ever offered to him. Claimant produced statements from the chiropractors. That from Dr. M. L. Williams, dated August 2, 1961, stated that claimant was under the doctor's care for "a lower back condition" from August 1 through August 31, 1960. That from Dr. J. H. Kister, dated July 1, 1961, stated that claimant had been under his care "for a severe strain of the low back muscles and has been advised by me to refrain indefinitely from extreme heavy lifting. Due to the nature of injury, recovery cannot be accomplained (sic) if this type of work is continued."

During his interrogation by the referee (only the referee questioned the witnesses) the claimant stated that he and his cousin, Denver LaPlante, who also worked for the company, rode together to and from work each day. That he talked things over with his cousin, and both decided to quit. They quit at noon, and did not give any notice that they were going to leave. They quit at the same time because, " * * * they was riding him all the time and they

were riding me at the same time * * *." When asked to explain what he meant by "riding" he answered, "I can't explain it. Just little odds and ends, just criticism of you." As an example, "For instance if you forgot something he (Bayer) would check (chew?) you out and you would have to go back and get it or get it the next time and just stuff like that." Another example, "In a situation if you were slacking down on the work, it seemed like he wasn't slacking down, well, he would tell you about that." Earlier he had said that he quit because, "Well, for one thing I got tired taking the bull and another thing it was injuring my health." Another thing he disliked was that " * * * the slaughter house that morning was blazing hot and after you get through emptying it then you got to go back in the coolers and cut up pork * * *." He said that there was no particular incident which caused him to quit on July 13, and that "It was building up, that was all this dissatisfaction, and I talked it over with my cousin and we both decided to quit right then."

Ronnie White, produced as a witness on behalf of claimant, stated that he had worked at Twin City's slaughter house as a lugger, filling orders, until July 1, 1961. He estimated that the average forequarter weighed from 75 to 100 pounds, and the average hindquarter 100 to 125 pounds. According to White there was a hoist that lowered the hindquarter onto the back of the truck driver. He was permitted to volunteer that the beef was too heavy for a 145 pound man, and that if he had been made a truck driver he would have quit. Claimant added that the hoist couldn't be used because the rope was too short.

Earl Bayer, manager of the slaughter house, and Walter W. Walton, president of the company, both testified that it was very unusual for a quarter of beef to weigh 200 pounds. Bayer stated that if one did it was cut down to approximately 100 pounds and that claimant was never required to carry one weighing 200 pounds. Walton said that there was a hoist available for handling the

beef, so that it was not necessary for a truck driver to lift it. Bayer testified that claimant made no complaint to him on the day claimant quit, that claimant had never made any complaint, and that he could not remember that claimant ever asked for a transfer to other work. He related that on two occasions when he knew claimant had been to the doctor he offered to put claimant on lighter work but the claimant insisted that he wanted to load the beef. Bayer denied that he had ridden claimant, and stated that cleanliness was an important factor in handling beef, and that at times he suggested to claimant that he wash his truck, but did so in an amiable manner. He also stated that claimant was a little more forgetful than others, and that the locker people would have to tell claimant three or four times before he would remember to get the parcel on his truck. Walton testified that he had offered claimant a lighter job driving a delivery truck, with mixed loads of orders weighing 50 to 75 pounds apiece, but that claimant turned it down, even though the pay was higher. He also said that the claimant had been off from work only one day for sickness from January to April, 1961, and seven and a half days without giving any reason.

■ The appeals referee found that the work was not as heavy as the claimant contended; that he had been offered lighter work but refused to accept it; that the claimant left his work because he was dissatisfied with his working conditions; and that the claimant left his work voluntarily without good cause attributable to his work or to his employer. Claimant then filed an application to have the decision of the appeals tribunal reviewed by the Industrial Commission. The Commission denied his application, thereby adopting as its own the findings and decision of the appeals tribunal. Section 288.200 RSMo 1959, V.A. M.S. Thereupon claimant initiated this action in the Circuit Court to secure a judicial review of the Commission's decision. The court found that the finding of the Commission that claimant left his work

voluntarily without good cause attributable to his work or to his employer " * * * is not supported by competent and substantial evidence upon the whole record and is clearly contrary to the overwhelming weight of the evidence"; that "the findings and decision of the Industrial Commission are erroneous as a matter of law"; and the court reversed and remanded the cause for further proceedings not inconsistent with its declaration. This appeal by the Commission followed. We have not been favored with a brief from the claimant.

■ Where a question of law is not presented, the scope of any judicial review in a matter of this nature is limited to that of determining whether, upon the whole record, the Industrial Commission could reasonably have made its findings and reached its result. Producers Produce Co. v. Industrial Commission of Mo., 365 Mo. 996, 291 S.W.2d 166; Kilgore v. Industrial Commission, Mo.App., 337 S.W.2d 91; Meyer v. Industrial Commission of Mo., 240 Mo.App. 1022, 223 S.W.2d 835. Neither a circuit court, nor this court, may substitute its judgment on the evidence for that of the administrative tribunal, nor may either set aside the Commission's findings and order unless it is clearly contrary to the overwhelming weight of the evidence. Section 288.210; Producers Produce Co. v. Industrial Commission of Mo., supra; Ritch v. Industrial Commission, Mo.App., 271 S. W.2d 791; Hart v. Industrial Commission of Mo., Mo.App., 234 S.W.2d 803. And in making its review a court must consider the evidence in the light most favorable to the finding, together with all reasonable inferences that may be drawn therefrom. Producers Produce Co. v. Industrial Commission, supra.

■ Section 288.050, so far as here material, provides:

"1. Notwithstanding the other provisions of this law a claimant shall be disqualified for waiting week credit or benefits until after he has earned wages

equal to ten times his weekly benefit amount if the deputy finds

(1) That he has left his work voluntarily without good cause attributable to his work or to his employer; * *."

Both in his initial claim, and in his testimony, the claimant conceded that he quit his job. However, the mere fact that an employee leaves his employment does not necessarily mean that the act is voluntary. Kilgore v. Industrial Commission, supra. If reasons of health or similar factors having a causal connection between his disability and his work compel him to leave, then the termination cannot be said to be voluntary and it is good cause attributable to his work, within the meaning of the statute. Kilgore v. Industrial Commission, supra; Bussmann Mfg. Co. v. Industrial Commission of Mo., Mo.App., 327 S.W.2d 487; Bussmann Mfg. Co. v. Industrial Commission, Div. of Employment Sec., Mo. App., 335 S.W.2d 456. This, in effect, was claimant's contention. Of course, the burden of proof rested upon the claimant to establish his right to benefits. Haynes v. Unemployment Compensation Commission, 353 Mo. 540, 183 S.W.2d 77; Wolpers v. Unemployment Compensation Commission, 353 Mo. 1067, 186 S.W.2d 440; Producers Produce Co. v. Industrial Commission of Mo., supra.

■ It is apparent from the review of the testimony that there was a sharp conflict in the evidence as to the weight of the quarters of beef the claimant was required to load and unload; whether there was a hoist available for use in handling them; the state of claimant's health and his ability to perform the work; whether claimant had ever requested a transfer to lighter work; whether the employer had ever offered claimant lighter work, and if so, whether the claimant had refused it; and whether claimant in fact quit his job because the work was injurious to his health, or whether he left because he was dissatisfied over fancied criticism and his working conditions

and "got tired of taking the bull," as he himself expressed it. It is likewise obvious that the Commission resolved these conflicts adversely to the claimant and reached its ultimate finding that the claimant left his work voluntarily without good cause attributable to his work or to his employer. That decision was supported by competent and substantial evidence, and is not contrary to the overwhelming weight of the evidence. Hart v. Industrial Commission of Mo., supra; Kilgore v. Industrial Commission, supra.

The judgment of the circuit court is therefore erroneous and should be reversed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court. Accordingly, judgment is reversed.

RUDDY, P. J., and WOLFE and ANDERSON, JJ., concur.