Joseph P. GLIMCO and Lena Glimco, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 16469.

United States Court of Appeals
Seventh Circuit.

June 19, 1968.

Rehearing Denied July 9, 1968.
Certiorari Denied Dec. 9, 1968.
See 89 S.Ct. 452.

Edward J. Calihan, Jr., Chicago, Ill., for petitioners-appellants.

Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Richard C. Pugh, Harry Baum, Louis M. Kauder, Attys., U. S. Dept. of Justice, Tax Div., Washington, D. C., for respondent-appellee.

Before CASTLE, Chief Judge, and SCHNACKENBERG and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

In the Tax Court, Joseph P. Glimco ("Taxpayer") filed a petition for a redetermination of deficiencies asserted by the Commissioner of Internal Revenue for the taxable years 1954 through 1957.[1] On the three issues involved here, the Tax Court decided in favor of the Commissioner. Those issues are (1) do the legal fees and expenses, totaling approximately $125,000, paid by Teamsters Local 777 to defendant Taxpayer in a Hobbs Act prosecution, constitute income to Taxpayer or are they deductible as ordinary and necessary business expenses; (2) whether his cost basis for real property at 1215 North Oak Park Avenue, Oak Park, Illinois, was overstated; and (3) whether certain dividends were taxable to him or his children.

### Deductibility of Legal Fees

Between June 1937 and January 1939, Taxpayer was employed by Local 650, Poultry Handlers Union, as an organizer. From 1940 through the taxable years in question, he was employed by Local 777 of the Taxicab Drivers, Maintenance and Garage Helpers Union, with jurisdiction

---

1. Taxpayer's wife, Lena Glimco, is also a party but only by virtue of filing joint returns with her husband during the taxable years in question.

over the taxi drivers in Chicago. From 1950 to 1958, he was a trustee of Local 777 and was *ex officio* a member of Joint Teamsters Council No. 25, the policy-making organization for over 40 Teamster locals in the Chicago area.

During the four taxable years, Taxpayer spent his mornings at the Chicago office of Local 777 and his afternoons at a restaurant in the poultry market area of Chicago. While at the poultry market, he was consulted constantly by various unions and employers concerning the conduct of the poultry market with respect to wages, hours and working conditions.

In October 1954, Taxpayer and four other individuals were indicted for violation of the Hobbs Act (18 U.S.C. § 1951). In the indictment Taxpayer was described as an agent and representative of Local 650 of the Chicago Poultry Handlers Union. No mention was made of Teamsters Local 777 or Joint Teamsters Council No. 25. He was charged with unlawfully collecting money from poultry merchants from 1944 to 1954 through "actual and threatened force, violence, and fear." Taxpayer pleaded not guilty to the indictment and was acquitted by a jury in March 1957.

The payment of Taxpayer's legal fees and expenses was authorized at an October 1954 meeting of the membership of Local 777, in part to combat press attacks being made upon Local 777.

The Assistant United States Attorney who prosecuted the Hobbs Act indictment against Taxpayer testified that the indictment concerned Taxpayer's interference with interstate commerce in the poultry market in Chicago, and that it was the Government's theory that Taxpayer's "position and influence in the Teamsters Union enabled him to dominate the transportation situation on the poultry market with regard to several locals [specifying 703, 705, 710, 731, and 738, but not mentioning Local 777] that were involved in transportation * * *."

Taxpayer's counsel in the criminal case testified that the indictment stemmed from Taxpayer's activities as a labor leader on the poultry market, and that it extended beyond Taxpayer's position in Local 777.

In the Tax Court, the Taxpayer's primary contention was that the legal fees and expenses were a gift to him by Local 777. However, the Tax Court found that Local 777 did not have a donative intent but was trying to benefit itself by mitigating press attacks resulting from the indictment. The Taxpayer does not really attack this finding, for his brief admits "that the motivation of the union [Local 777 in paying these legal fees and expenses] was to defend its image in the labor movement and the effectiveness of its members and officers as its representatives."

The Taxpayer states that the remaining issue with respect to the legal fees is a factual one to determine whether Taxpayer's activities giving rise to the legal expenses were in connection with his "trade or business" within the meaning of Section 162(a) of the Internal Revenue Code (26 U.S.C. § 162(a)). That provision must be narrowly construed. United States v. Gilmore, 372 U.S. 39, 44–45, 83 S.Ct. 623, 9 L.Ed.2d 570. Taxpayer admits that the deductibility of the litigation costs depends on whether or not the indictment arose in connection with his profit-seeking activities. See United States v. Gilmore, supra, at pp. 47–48, 83 S.Ct. 623. The Tax Court denied deductibility because the indictment related to Taxpayer's ostensibly non-profit-seeking afternoon activities on the poultry market and not from his activities as a paid officer of Local 777.

In support of his argument that the legal fees and expenses are deductible, Taxpayer states that the touchstone is the origin of the liability out of which the expenses were incurred. United States v. Gilmore, supra; Commissioner of Internal Revenue v. Tellier,

383 U.S. 687, 86 S.Ct. 1118, 16 L.Ed.2d 185. Even so, under Section 162(a) of the Internal Revenue Code, to be deductible, the expenses must be in connection with a taxpayer's "trade or business." The most prominent factor in determining whether a taxpayer is engaged in a trade or business is the profit motive. To establish the deductibility of ordinary and necessary expenses incurred in carrying on a trade or business, the taxpayer must "initiate or conduct the enterprise in good faith with an intention of making a profit or of producing income." International Trading Co. v. Commissioner of Internal Revenue, 275 F.2d 578, 584 (7th Cir. 1960). This record is devoid of any showing that Taxpayer conducted his poultry market afternoon activities in order to produce any income or profit. Indeed, he reported no taxable income from his poultry market activities and testified that he did not recall having received any such income, nor did he show how those activities related to his position as an officer of Local 777. Because Taxpayer has failed to show that they were related to his income-producing trade or business, the Tax Court properly concluded that these expenditures were not deductible. Lydon v. Commissioner of Internal Revenue, 351 F.2d 539, 546 (7th Cir. 1965); Lamont v. Commissioner of Internal Revenue, 339 F.2d 377 (2d Cir. 1964); White v. Commissioner of Internal Revenue, 227 F.2d 779 (6th Cir. 1955), certiorari denied, 351 U.S. 939, 76 S.Ct. 836, 100 L.Ed. 1466. Moreover, there was no showing that Taxpayer pursued his poultry market activities as part of his employment with Local 777 or to serve its interests. Therefore, the expenditures could be considered as personal rather than business. Vernon v. Commissioner of Internal Revenue, 286 F.2d 173 (9th Cir. 1961).

 Taxpayer also relies on the settlement of Tax Court Docket No. 94551, permitting Local 777 to retain its exempt status under Section 501(c)(5) of the Internal Revenue Code (26 U.S.C. § 501(c) (5)). Under that set-tlement Local 777 was allowed to take certain deductions in 1956 and 1957, including legal fees and expenses paid to Taxpayer's counsel for the defense of the Hobbs Act case. The Tax Court took judicial notice of the settlement but considered it irrelevant and immaterial and as creating no estoppel. There having been no determination of the merits in Docket No. 94551, the doctrine of estoppel by judgment is inapplicable. United States v. International Building Co., 345 U.S. 502, 506, 73 S.Ct. 807, 97 L.Ed. 1182. Local 777 was interested in defending Taxpayer in order to protect its own image. Although the deductions may have been proper as to Local 777, that does not show that any Local 777 activities were involved in the poultry market case against Glimco. The union could fear that its image might be tarnished by one of its officers' allegedly illegal activities having no direct connection with Local 777 itself.

### Cost Basis of Real Property

In 1956, Taxpayer sold real property in Oak Park for $40,000, claiming a cost basis of $39,050. The Commissioner determined that Taxpayer's cost basis was actually only $30,901.60.

To support the higher cost basis claimed, Taxpayer testified that he paid $8,692 to various persons for land, windows, kitchen tile and landscaping. However, Taxpayer kept no written records of these payments and offered no receipts or testimony from the payees corroborating his claim. He had no checking account and admitted that his memory is poor.

 In rejecting the higher cost basis, the Tax Court stated that it did not believe Taxpayer's oral testimony about these cash payments. The mere fact that his testimony was uncontradicted did not require the trier of facts to accept it. Shapiro v. Rubens, 166 F. 2d 659, 666 (7th Cir. 1948). In view of his poor memory and failure to pro-

duce corroborative evidence, the Tax Court was justified in refusing to credit Taxpayer's testimony. Perlmutter v. Commissioner of Internal Revenue, 373 F.2d 45 (10th Cir. 1967); Archer v. Commissioner of Internal Revenue, 227 F.2d 270 (5th Cir. 1955).

### Dividends

The Tax Court upheld the Commissioner's determination that dividends paid on American Telephone & Telegraph Company stock in 1956 and 1957 were income to Taxpayer. In opposition, Taxpayer testified that he owned no A T & T stock and to the best of his knowledge, his wife did not (except possibly one or two shares). He contended that the A T & T stock in question had been given to his children or daughter by their parents or friends. Taxpayer stated that the stock may have been in his wife's name "as a beneficiary," but that it was owned by their daughter. He insisted that although the stock may have been carried in his wife's and one of the children's names, it was the children's stock.

■■ The Tax Court rejected Taxpayer's testimony, observing that it was not supported by testimony of his wife or children. The trial judge also noted that no stock certificates were produced or other evidence showing the names of the titleholders upon the books of A T & T. In these circumstances, the Tax Court was entitled to conclude that corroborative evidence did not exist or would not have supported Taxpayer's testimony. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affirmed, 162 F.2d 513 (C.A.10, 1947); Shaw v. Commissioner of Internal Revenue, 27 T.C. 561, 573, affirmed, 252 F.2d 681 (6th Cir. 1958). As with the testimony concerning the cost basis for the Oak Park real estate, the Tax Court was justified in refusing to credit Taxpayer's testimony.

The decision of the Tax Court is affirmed.