Dan **ROSENBERG** and **Mary Rosenberg,** Plaintiffs,

v.

**UNITED STATES of America,** Defendant.

No. 67 C 225(1).

United States District Court E. D. Missouri, E. D.

Jan. 30, 1969.

Victor Packman, St. Louis, Mo., for plaintiffs.

Veryl L. Riddle, U. S. Atty., Jim J. Shoemake, Asst. U. S. Atty., St. Louis, Mo., Elliott H. Kajan, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

HARPER, Chief Judge.

This is a suit for income tax refund, with jurisdiction founded upon 28 U.S. C.A. § 1346(a) (1). Originally instituted by Dan and Mary Rosenberg, pursuant to Rule 25 upon the untimely death of the taxpayer Dan Rosenberg, the present parties were substituted and this action shall proceed in their favor. In view of the fact that the suit deals solely with the income and earnings of Dan Rosenberg for the tax years 1959, 1960 and 1961, all of the references, including the word plaintiff, shall refer to him. Mary Rosenberg was joined as party plaintiff only because the income tax returns were filed jointly. No contention is made that she earned or participated in the earning of the sums here disputed.

During the three years in question the plaintiff was employed as a salesman by the Bristol Manufacturing Company and was compensated under the terms of a Commission Sales Agreement (Exhibit A–1) and a Supplement thereto (Exhibit A–3). Under these documents the plaintiff was entitled to a drawing account of $200.00 per week and was further reimbursed for certain expenses. Both of these items are by the terms of the contract charged against his commissions. Plaintiff was a cash basis taxpayer. In each of the years in question Rosenberg reported as gross income only that amount of cash which he in fact had received from Bristol in that tax year (calendar year). This amount consisted of the $200.00 per week draw, plus reimbursed expenses, plus the commission balance due him which he drew from the prior tax year, and other cash drawn from Bristol on his commissions during the tax year. By the terms of the employment contract (A–1) Bristol would each month tabulate the sales of the salesman and would send to him a statement of the amount of commissions which he had earned and which were credited to his account. There was a time lag of one to one and one-half months on this report. In February of the next year a compilation of these monthly reports would be made and a final tally taken. (See Exhibits 3, 7, 15, 16 and 17.) These sheets show the amount of commissions earned during the year, the charges made against them, and the commission balance due to the salesman.

The taxpayer in these three years reported this commission balance in the tax year in which he received that amount. Thus, for the tax year 1959, he reported the commission balance from the year 1958, and in 1960 the balance from 1959, and in 1961 the balance from 1960, etc.

The government based its deficiency (to the extent which we are concerned with it) on the theory that this method of reporting was incorrect. The Commissioner asserted that the taxpayer con-

structively received the entire amount of his earned commissions in a given tax year. However, the Commissioner recognized the time lag and, therefore, calculated that for the tax year 1959 Rosenberg should have reported the commissions which he earned from December of 1958 through November of 1959, etc. The Commissioner's position is that the drawing account and reimbursement of expenses are in the nature of loans under the employment contract and that, therefore, they should not be reported as income, but rather that the whole of the earned commissions should have been reported.

It is the opinion of this court that the government's contention must be sustained and judgment entered for the United States of America.

■■ It is abundantly clear that the taxpayer in a refund suit bears the burden of proof that the Commissioner's assessment of a deficiency was incorrect, and the Commissioner's assessment does carry with it a presumption of correctness. See, AcerRealty Co. v. Commissioner of Internal Revenue, 132 F.2d 512 (8th Cir. 1942), and generally note numbers 131 et seq. to 26 U.S.C.A. § 7422.

The doctrine of constructive receipt upon which the Commissioner's determination was based is set forth in the Regulations, section 1.451–1 et seq. It has its foundation in section 451 of the I.R.C. of 1954. The doctrine is well founded and has a long history. Its application is an application of accepted rules to varying fact situations, and because of this variety of situations precedent has but small value in its application. The doctrine itself has been explained as follows:

A taxpayer should not have the right to select the year in which to reduce income to possession. It is now well settled that income which is subject to a taxpayer's unfettered command and which he is free to enjoy at his own option is taxed to him as his income whether he sees fit to enjoy it or not. The doctrine of constructive receipt is

to be applied where a cash basis taxpayer is presently entitled to money, which money is made available to him, and his failure to receive it in cash is due entirely to his own volition.

2 Mertens, Federal Income Taxation, section 10.01. See also sections 10.02 and .03. For other similar statements of the doctrine see: United States v. Pfister, 8 Cir., 205 F.2d 538; AcerRealty Co. v. Commissioner of Internal Revenue, supra; Helvering v. Gordon, 8 Cir., 87 F.2d 663; Helvering v. Schaupp, 8 Cir., 71 F. 2d 736; Loose v. United States, 8 Cir., 74 F.2d 147.

■ While a taxpayer so long as he acts within the law has the right to minimize his federal income tax obligations or avoid them altogether if he can (Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596), he may not arbitrarily select the year in which a given item is to be reported.

■ As previously noted, the burden is upon the taxpayer to show that the income in question (the commissions) was not credited to his account or set apart for him or otherwise made available to him or that he could not draw upon it at any time or that his control was subject to substantial limitations. See Newmark v. C. I. R., 2 Cir., 311 F.2d 913, 915.

The taxpayer here asserts that first, he could not draw upon his commissions at will and lacked control over their payment; second, that the monies were not earmarked and set aside for him; and third, that there were other substantial limitations existing, mainly a shortage of cash by Bristol which negates the doctrine.

First, the evidence in this case indicates that the commissions earned by the taxpayer were credited to the account of the taxpayer on a month-by-month basis. Indeed, the contract of employment so requires. Exhibits B, C, D and E reveal that the commissions earned were recorded and credited to the salesman account of the taxpayer. See also Sousa depositions (pp. 10 and 11) and Seaman's

deposition (pp. 22–23 and 25–26). Therefore, this contention is without merit.

The thrust of the taxpayer's attack comes in the other two contentions, namely, that the taxpayer lacked control over these funds and was unable to draw upon them at any time and that another substantial limitation existed, namely the financial situation of the company Bristol. First and foremost, plaintiff relied on the employment contract (Exhibit A–1). A careful reading of this contract demonstrates to the court that it is susceptible to two readings: One consistent with the plaintiff's interpretation that the salesman had no right to be paid until the end of the year accounting which occurred in January or February of the next year; the other consistent with the government's position that the commissions were available for payment, on demand, on a month-to-month basis due to the time lag heretofore mentioned.

As plaintiff asserts, customary practices of the employee and employer should be examined to determine which interpretation should control. Unfortunately for the plaintiff, the evidence relating to these practices uniformly reveals that the money was available on a month-to-month basis. First, Exhibits B, C, D and E reveal that the taxpayer often drew *more* than the total of his $200.00 per week draw and reimbursed expenses after his pre-existing commission balance was exhausted. Thus, these exhibits demonstrate that Rosenberg had free access to the commissions which he was earning in that tax year, and in fact drew on them.

For example: Compare Exhibits 7 and B. For 1959, using plaintiff's method, total cash should equal $33,300.21. But $43,642.81 was paid, an excess of $10,-342.60 above the commission balance, plus expenses, plus $200.00 per week for 52 weeks.

For 1960, compare Exhibits 3 and D. Here $34,378.26 (excluding bonus) would be the applicable amount under plaintiff's allegation. But $43,679.20 was paid ($41,179.20 excluding bonus) or an excess of $6,800.94 above the commission, balance plus expenses plus $200.00 per week for 52 weeks (excluding the bonus not charged against commissions).

For 1961, plaintiff's contention would lead to a payment of $44,059.76. However, Exhibit E shows payment of $57,-091.71 or an excess of $13,031.95. In other words, in each year Rosenberg clearly drew *more* than he claims he could have; but he obviously drew *out* on the commissions he had earned in that tax year.

The overwhelming evidence in all four depositions in this case is that the taxpayer could draw against his commissions at will after requesting same.

It is the opinion of the court, after reviewing the testimony of the four witnesses, that the plaintiff has failed to demonstrate that the taxpayer lacked the ability to draw upon his earned commissions at any time taking into account the time lag. In other words, the presumption of correctness is not overcome in this respect. The evidence demonstrates the contrary—that Rosenberg could draw at will when he was in the black and in fact was allowed to draw sometimes when he was not. See for example the clear testimony of William H. Smith, president of Bristol (Deposition, p. 22; pp. 27–28, Q 109; pp. 36–37). No substantial limitations have been demonstrated in this regard.

The final matter is that of the financial position of the company. Of course, a showing of insolvency or that funds to meet the commission credits were otherwise lacking will avoid constructive receipt. See Newmark v. C. I. R., supra. Such evidence would establish a substantial limitation. Many cases have touched upon the degree of financial difficulty necessary to avoid this doctrine. Obviously, insolvency will. The problem is what less than insolvency will. The Bristol Company was not insolvent. It had for the years in question a low, but positive current ratio below two to one. It was admittedly in a position of cash stringency. But unquestionably, in each

of the years involved the cash balance of the company as revealed by Exhibits J, K and L were sufficient to pay the amount due to *all* salesmen (Helm deposition, pp. 1–2, 5 and 7). The company had other obligations and it appears that its cash position was such that it could not have paid all of these obligations out of cash at any given time. However, the record also demonstrates that this was a continuing problem, routinely overcome by factoring and that the company regularly had sufficient available accounts receivable so that it could obtain the cash necessary to pay all current obligations. The crucial fact, however, is that it had the cash to pay all salesmen and could have done so without causing financial embarrassment to itself. See generally: George W. Johnson, 25 T.C. 499; William D. Huber, 12 B.T.A. 1; Old Colony Trust Company, 22 B.T.A. 1062; William J. Wineberg, 61, 336 PHT.C.1961 Vol. 61 at 1917; Baker v. United States, 17 F.Supp. 976, 84 Ct.Cl. 428; A. D. Saenger, Inc. v. Commissioner of Internal Revenue, 5 Cir., 84 F.2d 23, 25; Jacobus v. United States, 9 F.Supp. 41, 45, 80 Ct. Cl. 357; Roe v. Commissioner of Internal Revenue, 5 Cir., 192 F.2d 398, 402–403; Hurtz v. United States, 162 Ct.Cl. 855. This latter case states what this court believes to be the most logical test when it states that the point of dominant significance is the corporate ability to pay considering its over-all financial condition.

The real weakness of the plaintiff's contention in this regard is that from the exhibits in this case and the testimony received by deposition, there is no reason to assume or to believe that the company was in any better position to pay the salesman under plaintiff's theory than it was under the government's. Rather clearly, the cash problem was continuing.

The plaintiff has failed to establish that the company's financial condition was such as to impose a substantial limitation on the taxpayer's ability to freely draw upon his earned commissions taking into account the one month or so time lag.

It is the opinion of this court that judgment must and should be entered in favor of the defendant, United States of America, on the merits and that the plaintiff's cause should be dismissed with prejudice. Plaintiff has failed to establish that the government incorrectly applied the doctrine of constructive receipt to the instant case.

This memorandum is adopted by the court as its findings of fact and conclusions of law and the clerk will prepare and enter the proper order giving judgment to the defendant and dismissing plaintiff's cause with prejudice.