427 F.Supp. 679 (1977)
LAUREL HILL CEMETERY ASSOCIATION, Plaintiff,
v.
UNITED STATES of America, Defendant.
No. 75-233C(A).
United States District Court, E. D. Missouri, E. D.
February 4, 1977.
*680 Biggs, Curtis, Casserly & Barnes, Ward Fickie, Clayton, Mo., for plaintiff.
Evelyn Leopold, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

MEMORANDUM OPINION
HARPER, District Judge.
Plaintiff, Laurel Hill Cemetery Association (hereinafter referred to as the Association), brings this action for a refund of income taxes, and penalties and interest thereon assessed against and paid by plaintiff-taxpayer *681 in the sum of $19,866.31 for the years 1954 through 1957, 1960 and 1961. This Court's jurisdiction of the case is proper under 28 U.S.C. § 1346(a)(1). Venue is proper pursuant to 28 U.S.C. § 1402(a)(1).
From the stipulation of facts and numerous joint exhibits filed by the parties with the Court it appears that the Association was formed as a voluntary association on July 23, 1923, for the stated purpose of providing and maintaining a cemetery for "the burial therein of white human remains of the Caucasian race." The Association was neither organized nor operated for profit. Subsequent to its organization, the Association was granted a Pro Forma Decree of Incorporation and thereby created as "a body politic and corporate." The Association at all times pertinent to this case was a pro forma decree corporation and so remains at the present.
On the same date the Association was formed as a voluntary association, the Plymouth Securities Company (hereinafter referred to as Plymouth) was organized for profit as a business trust. At the time of its organization Plymouth owned certain real property located in St. Louis County, Missouri, known as the Laurel Hill Cemetery. This tract of land, originally consisting of 160 acres, over the years has been reduced in size to 110 acres at the date of this litigation. At the present, Laurel Hill Cemetery has approximately 5,000 lot owners owning 33,000 grave spaces. There have been over 8,500 burials in the cemetery.
On the very day of their organization Plymouth and the Association entered into an agreement whereby, among other things, (1) Plymouth agreed to lay out, plat, develop and improve Laurel Hill Cemetery under plans approved by both parties to the agreement; (2) Plymouth agreed to deed to the Association all walks, driveways, roads, sewers, entrances, buildings and parks; (3) Plymouth agreed to convey to the Association all cemetery lots bearing numbers ending with the numeral naught; (4) Plymouth agreed to deposit ten percent of the sales price of all cemetery lots it sold with the Association; and (5) the Association, in consideration of the above gifts and conveyances, agreed to create a perpetual care fund from the proceeds of the sale of lots and to assume the care and maintenance of sections of the cemetery of not less than twenty-five acres, when they were fully developed, provided the Association had a perpetual care fund of at least $100,000.00 for each section of twenty-five acres.
In 1945, Ray L. Johnson and Robert W. Maysack entered into a contract to purchase the assets of Plymouth including the Laurel Hill Cemetery real estate and cemetery equipment, records and supplies. In 1946, Johnson and Maysack formed a corporation entitled Laurel Hill Memorial Gardens, Inc. (hereinafter referred to as the Cemetery Company) as a profit making corporation. The two men then assigned their rights under the 1945 contract with Plymouth to the newly organized Cemetery Company. The Cemetery Company presently owns Laurel Hill Cemetery and operates such for profit. Any dividends paid from the net earnings of the Cemetery Company are paid to private shareholders and individuals.
In July of 1946, the Association entered into an "Agency Agreement" with the Mutual Bank and Trust Company of St. Louis. This agency agreement arranged for property owned by the Association to be held by the bank subject to letters of instruction received from the Association's Executive Committee. The bank or a successor corporation acted as a custodian and depository agent of Association property from 1946 until August of 1966, when that property was placed in trust with St. Louis County National Bank. During the years 1954 through and including 1961, the assets of the Association's account consisted primarily of notes secured by first deeds of trust of real estate, treasury bills, treasury bonds and other United States Government securities, as well as certificates of deposit with Savings and Loan Associations.
The Association in 1952 filed an application for exempt status under Section 501(c)(13) of the Internal Revenue Code. *682 When this application was denied by the Internal Revenue Service the Association filed a protest of the action. Though attempts were made to resolve questions regarding plaintiff's requested tax-exempt status, the Service ultimately denied such status to the plaintiff.
In 1950, Johnson and Maysack formed Memorial Enterprises, Inc. (hereinafter referred to as Memorial). From 1950 to 1958, Memorial employed eight to twelve persons who performed all services necessary to operate Laurel Hill Cemetery on a day-to-day basis. Memorial paid its employees, then billed the Cemetery Company for services rendered. Over the same period of time the Cemetery Company had no employees on its payroll other than Johnson and Maysack. The Association had no salaried employees during the years involved in this litigation.
After 1958, the Cemetery Company paid salaries directly to those individuals formerly employed by Memorial and considered them its own employees. The services provided by Cemetery Company employees from 1959 through 1961 were those previously provided by the employees of Memorial and included the opening and closing of graves; lawn, road and walkway maintenance; grave market installation and maintenance; and drainage and irrigation.
During the years in suit the Association maintained neither a checking nor a savings account in any bank or similar organization. Interest and dividends from the property comprising the perpetual care fund (in the custodial account) were disbursed to the Association by checks which were then endorsed over to the Cemetery Company. These funds were deposited to the general bank account of the Cemetery Company, from which were paid all the disbursements for the bills of the Cemetery Company. Exact figures on costs actually incurred for other operational expenses during the years 1954 through 1961 are not available. However, the parties have estimated that the cost of providing care and maintenance for Laurel Hill Cemetery during this period amounted to between $29,000 and $40,000 per year, or forty to fifty-five per cent of the total cost per year for all services provided.
During the years in suit there were no books of account, general ledgers, or similar financial records kept by or for the Association reflecting income or expenses. This situation, at least in part, led to the institution of a class action suit by certain cemetery lot owners, members of the Association by virtue of lot ownership, against Johnson and Maysack for alleged misdeeds in connection with their management of the Cemetery Company, the Association and Laurel Hill Cemetery. The cemetery lot owners by their action sought, (1) an accounting and determination of rights, interests and ownership of perpetual care funds; (2) payment of perpetual care funds to the County Council; (3) the appointment of a receiver; and (4) that defendants be enjoined from engaging in certain activities. The St. Louis Court of Appeals denied such relief, but did, however, order Johnson and Maysack removed from their offices as trustees of the Association.
In 1958, Johnson and Maysack each contracted with Pennsylvania Avenue Cemetery Company (hereinafter referred to as Pennsylvania Avenue) to sell one hundred percent of the stock of Memorial. In 1967, the various stockholders of Pennsylvania Avenue acquired the ownership of all of the Cemetery Company's stock by separate transactions with Johnson and Maysack.
This action is to recover income taxes, penalties and interest for the years 1954 through 1957, and 1960 and 1961. The plaintiff paid the following amounts for the following years:

 Income Tax Interest
Year Assessed Assessed Penalty Assessed Total
1954 $1,203.59 $1,092.02 $ 300.90 $ 2,596.51
1955 1,984.33 1,827.06 713.44 4,524.83

*683
1956 1,337.02 921.90 378.56 2,637.48
1957 2,239.07 1,628.48 559.77 4,427.32
1960 1,283.58 702.50 320.90 2,306.98
1961 1,941.51 956.10 485.38 3,372.99
 ________ ________ ________ _________
TOTAL: 9,989.10 7,118.06 2,758.95 19,866.11

Claims for Refund were filed by the plaintiff with the Internal Revenue Service claiming the following amounts:

1954 $ 2,596.51
1955 4,525.03
1956 2,637.48
1957 4,427.32
1960 2,306.98
1961 3,372.99
 __________
TOTAL: $19,866.31

The disposition of plaintiff's refund action turns upon the resolution of issues raised by both plaintiff and defendant. First, it must be determined whether plaintiff is precluded from raising grounds in its suit for refund which allegedly vary from those listed in its claim (Form 843) for refund. Second, the Court must determine whether the perpetual care fund is a tax-exempt organization under Section 501(c)(13) of the Internal Revenue Code. Third, the issue arises whether the perpetual care fund is taxable as a trust or, instead, is to be considered an association taxable as a corporation. Fourth, if it is found the perpetual care fund is taxable as a trust, it is necessary to decide whether the Association, as trustee, is entitled to a deduction on each of the returns filed for the perpetual care fund to the extent of any sum distributed or required to be distributed for the maintenance and care of Laurel Hill Cemetery under Section 651 of the Internal Revenue Code. Finally, regardless of the finding of the Court as to the perpetual care fund's status as a trust or an association, it must be determined whether that entity is entitled to a deduction on each of the returns filed to the extent of any sum expended for the maintenance and care of Laurel Hill Cemetery under Section 162 of the Internal Revenue Code. The parties to the action have stipulated that, if the court finds plaintiff entitled to any of the amounts sought, the amount of such recovery will be subject to recomputation by the Internal Revenue Service subject to the agreement of counsel for plaintiff.
Title 26 U.S.C. § 7422(a) provides in pertinent part:
"(a) No suit prior to filing claim for refund.  No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof.
Section 301.6402-2(b), Treasury Regulations on Procedure and Administration (1954 Code), states:
"(b) Grounds set forth in claim. (1) No refund or credit will be allowed at the expiration of the statutory period of limitations applicable to the filing of a claim therefor except upon one or more of the grounds set forth in the claim filed before the expiration of such period. The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. * * A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit."
*684 The filing of a claim in accordance with Section 7422(a) and the regulations established pursuant thereto is a statutory prerequisite to a refund, serving as a jurisdictional requirement which cannot be waived. Bohn v. United States, 467 F.2d 1278, 1279-1280 (8th Cir. 1972). See also United States v. Rochelle, 363 F.2d 225, 231 (5th Cir. 1966). One object of this requirement is to advise the appropriate government officials of claims intended to be asserted, in order to provide an orderly administration of review. United States v. Felt & Tarrant Manufacturing Co., 283 U.S. 269, 272, 51 S.Ct. 376, 75 L.Ed. 1025 (1931); Thompson v. United States, 332 F.2d 657, 659-660 (5th Cir. 1964); Scovill Manufacturing Co. v. Fitzpatrick, 215 F.2d 567, 569 (2nd Cir. 1954).
Previous to the commencement of the present refund suit plaintiff filed claims for refund with respect to each of the years in issue. On each claim, under subparagraph (k) of Form 843, it was stated that the refund claim should be allowed for the following reasons:
"Laurel Hill Cemetery Association is a not-for-profit organization exempt from tax under Section 501(c)(13). The taxpayer is entitled to distribution deductions as it is a trust distributing proceeds to beneficiaries and/or the taxpayer is entitled to deductions for expenditures made for and on behalf of the beneficiaries and, further, taxpayer is entitled to a deduction for ordinary and necessary expenses."
Plaintiff's statement of legal issues filed with the Court submits that disposition of the case will be made on the resolution of the following questions:
"I. Does plaintiff qualify as a tax-exempt cemetery company not operated for profit or as a cemetery corporation chartered solely for burial purposes under the provisions of Section 501(c)(13) of the Internal Revenue Code, as amended?
"II. Was the perpetual care fund of Laurel Hill Cemetery a trust, and during the years 1954 through 1957, 1960 and 1961, was Laurel Hill Cemetery Association the Trustee of said trust; or was plaintiff the owner of a perpetual care fund and an association taxable as a corporation?
"III. If the Court determines the perpetual care fund is taxable as a trust, was Laurel Hill Cemetery Association, trustee, entitled to a deduction on each of the returns filed for the perpetual care fund to the extent of any sum distributed or required to be distributed for the maintenance and care of the cemetery; IRC Section 651.
"IV. If the Court determines the perpetual care fund is taxable as a trust, was Laurel Hill Cemetery Association, trustee, entitled to a deduction on each of the returns filed for the perpetual care fund to the extent of any sum expended for the maintenance and care of the cemetery; IRC Section 162.
"V. If the Court determines the perpetual care fund is an association taxable as a corporation, was it entitled to a deduction on each of the returns filed to the extent of any sum expended for the maintenance and care of the cemetery? IRC Section 162."
Defendant contends that claims plaintiff now makes in its suit for refund vary from the grounds given in the claims for refund filed prior to the institution of suit, and that, accordingly, such claims may not be asserted in the present proceeding. Specifically, defendant argues that legal issue I seeks to determine whether the perpetual care fund is tax-exempt under Section 501(c)(13), while the claims for refund alleged the Association to be tax-exempt under that Section. Similarly, defendant notes that issue II considers whether the perpetual care fund is a trust or a corporation, and yet the claims for refund made no prior assertion with regard to the legal status of the perpetual care fund. It is *685 noted that issue III treats the possible deduction of distributions to beneficiaries by the Association as trustee of the perpetual care fund, whereas the perpetual care funds were not assessed and did not file tax returns. Finally, defendant argues that issues IV and V consider the possible deduction by the perpetual care fund, be it found trust or association taxable as a corporation, of sums expended for the care and maintenance of Laurel Hill Cemetery, though the claims for refund raised the Association's rather than the fund's possible status as a trust or association and no returns were filed on behalf of the perpetual care fund.
In examining defendant's allegations of variance it is important to first note that at least one of the alleged variations between plaintiff's claims for refund and the issues presented by plaintiff's refund suit does not exist. Issue I, as stated and brief by the Association, considers the possible tax-exempt status of "Plaintiff" under Section 501(c)(13). Plaintiff's claim for refund stated that the Association, the plaintiff in the case at bar, was a not-for-profit organization exempt from tax under that section. The Court sees no variance between these two claims.
It does appear, however, that technical variations do exist between the grounds on which plaintiff seeks refund as stated in the claims for refund filed with the Internal Revenue Service and as presented in the present refund suit. These variations between the claims and the suit are primarily found in the denomination of the particular entity, Association or perpetual care fund, which is allegedly entitled to distribution deductions available to a trust and ordinary and necessary business expense deductions on returns filed. Though variances do not exist as to the substance of grounds on which the claims and suit are made, variances do exist between the entity plaintiff alleges is entitled to argue those same grounds.
It is the opinion of the Court that the variations in the claims made by the plaintiff and confusion necessarily arising from those variations are attributable primarily to the actions of defendant. For the tax years in question plaintiff completed and returned United States Fiduciary Income Tax Returns denominating the "Laurel Hills [sic] Cemetery Association Perpetual Care Trust" as the trust for which the returns were made. Having considered these returns, the Internal Revenue Service assessed income tax deficiencies and delinquencies for the years in question against the "Laurel Hill Cemetery Association" and refers to such as the name of the taxpayer. Any confusion which exists as to the identity of the taxpayer is the result of the defendant's assessment of an entity different from that which initially filed the tax return. Presumably, a claim for refund filed in the name of the "Perpetual Care Trust" would not have been accepted by the Service since it would not have been filed in the name of the party assessed. Such treatment by the Service explains the variations in the denomination of the entity presenting grounds for refund in the filed claims and present suit and justifies the Court in overlooking these variations.
As noted above, the primary justification for the requirement that a taxpayer make a claim for refund prior to bringing suit lies in the notification such claims provide officials, thereby allowing the Commissioner to correct claimed errors and limit issues to be litigated in the event of further disagreement. Thompson v. United States, supra, at pages 659-660. In Keneipp v. United States, 87 U.S.App.D.C. 242, 184 F.2d 263 (1950), it is stated at page 267:
"The rule is that the claim must be sufficient to advise the Commissioner of Internal Revenue as to the items as to which the taxpayer claims error and the grounds upon which the taxpayer makes his claim. If the Commissioner understands the grounds and deals with the claim on the basis of his understanding, the claim is sufficient."
It is apparent to the Court that, though plaintiff's grounds for refund of taxes paid might well have been more artfully drawn and coordinated between the filed claims *686 and present suit, the defendant sufficiently understands the substance of the contentions made by plaintiff. The defendant further comprehends the relationship existing between the Association and the perpetual care fund and has suffered no prejudice as a result of the variations which do exist between the claims for refund and the instant suit. The claimant has not raised a totally new factual basis for his claim at trial nor has he shifted the legal theory of his claim. Scovill Manufacturing Co. v. Fitzpatrick, supra, at page 569.
Before proceeding to an examination of the substantive issues presented by plaintiff's claims of tax-exempt status and various allowable deductions, the Court observes that a presumption of correctness attaches to findings and assessments made by the Commissioner of Internal Revenue. Estate of Broadhead v. Commissioner, 391 F.2d 841, 844 (5th Cir. 1968); Eagle v. Commissioner, 242 F.2d 635, 637 (5th Cir. 1957); Adams v. United States, 358 F.2d 986, 994, 175 Ct.Cl. 288 (1966). As stated by the court in Rosenberg v. United States, 295 F.Supp. 820, 822 (E.D.Mo.1969), aff'd 422 F.2d 341 (8th Cir. 1970):
"It is abundantly clear that the taxpayer in a refund suit bears the burden of proof that the Commissioner's assessment of a deficiency was incorrect, and the Commissioner's assessment does carry with it a presumption of correctness."
See also Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933); United States v. Anderson, et al., 269 U.S. 422, 443, 46 S.Ct. 131, 70 L.Ed. 347 (1926); Green v. Bookwalter, 319 F.2d 631, 633 (8th Cir. 1963); Jones v. United States, 371 F.2d 442, 446, 178 Ct.Cl. 16 (1967). In Mercantile Bank & Trust Co. v. United States, 441 F.2d 364 (8th Cir. 1971), it is stated at page 366:
"Special benefits to taxpayers, such as tax exemption status, do not turn upon general equitable considerations but are matters of legislative grace. The taxpayer has the burden to show that it comes within the statutory provision allowing the deduction or exemption." (Citing cases.)
"Exemptions from taxation are to be construed narrowly." (Citing cases.)
Plaintiff-Association contends that it is exempt from taxation under 26 U.S.C. § 501(c)(13). Section 501 provides in relevant part:
"501. Exemption from tax on corporations, certain trusts, etc.
"(a) Exemption from taxation.  An organization described in subsection (c) and (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502, 503, or 504.
* * * * * *
"(c) List of exempt organizations.  The following organizations are referred to in subsection (a):
* * * * * *
"(13) Cemetery companies owned and operated exclusively for the benefit of their members or which are not operated for profit; and any corporation chartered solely for burial purposes as a cemetery corporation and not permitted by its charter to engage in any business not necessarily incident to that purpose, no part of the net earnings of which inures to the benefit of any private shareholder or individual."
It is well settled that Section 501(c)(13) establishes three mutually independent statutory requisites for exemption, of which the presence of any one creates an exemption. First, cemetery companies are exempt which are owned and operated exclusively for the benefit of their members. Second, cemetery companies are exempt which are not operated for profit. Third, an exemption exists for a cemetery corporation chartered solely for burial purposes, no part of the earnings of which inure to an individual or shareholder. Mercantile Bank & Trust Co. v. United States, supra, at pages 365-366; Commissioner v. Kenisco Cemetery, 96 F.2d 594, 596 (2nd Cir. 1938); Trustees of the Graceland Cemetery Improvement Fund v. United States, 515 F.2d 763, 769 (Ct.Cl.1975).
*687 The tax-exempt status of cemetery associations has arisen as an issue in a number of cases presenting factual situations substantially similar to that of the case at bar. In several of these cases the taxpayer sought the exemption of Section 501(c)(13) on the basis it was a cemetery company not operated for profit. Evergreen Cemetery Association v. United States, 444 F.2d 1232 (9th Cir. 1971); Mercantile Bank & Trust Co. v. United States, supra; Arlington Memorial Park Association v. United States, 327 F.Supp. 344 (W.D.Ark.1971); Rosehill Cemetery Co. v. United States, 285 F.Supp. 21 (N.D.Ill.1968). In the instant case, however, plaintiff claims it is entitled to tax-exempt status as a cemetery corporation chartered solely for burial purposes, no part of the earnings of which inure to an individual or shareholder.
In the opinion of the Court plaintiff has failed to meet its burden of proving it is within the exemption from taxation allowed by the third clause of Section 501(c)(13). This failure results from a consideration of two different but related factors. First, the facts as stipulated to by the parties disclose that a portion of the earnings of the plaintiff inured to the benefit of the Cemetery Company, which is a profit-making enterprise. The Cemetery Company received annual payments of income derived from property which constituted the perpetual care fund administered by plaintiff. These annual payments were utilized, at least in part, by the Cemetery Company to defray the expenses of maintaining Laurel Hill Cemetery. The parties to this action have stipulated that "[I]f the money which the Cemetery Company received from the Association was insufficient to maintain the cemetery property respectably, the Company's Management considered it to be its obligation to maintain the cemetery." See Stipulation of Facts, paragraph (31). Further, such maintenance and care of the cemetery was admitted to be the "primary obligation" of the Cemetery Company in 1958 when a stipulation was entered into by the parties in Powers, et al. v. Johnson, et al., (No. 201,386, Div.No. 3, Cir.Ct. for County of St. Louis), which stated:
"1. That the agreement of July 23, 1923, by and between Walter E. Haral [sic], M. Cury [sic] and William E. Reasor as Trustees of the Plymouth Securities Company and Laurel Hills [sic] is indefinite as to the obligation of the parties thereto to maintain and care for the cemetery property. The primary obligation for maintenance and care of the cemetery property shall be the obligation of Plymouth Securities Company, its successors and assigns." (Joint Exhibit XV)
Thus, the income of the perpetual care fund, and the Association which administers that sum, may be said to have indirectly inured to the benefit of the Cemetery Company's owners. See First National Bank v. United States, 327 F.Supp. 1119, 1121 (W.D. Tex.1970); Rosehill Cemetery Co. v. United States, supra at page 21. As stated in Trustees of the Graceland Cemetery Improvement Fund v. United States, supra at page 772:
"* * *, the fact that funds paid to the Cemetery Company inured to the advantage of the Company should further prevent the plaintiff from claiming a section 501(c)(13) exemption. To the extent the plaintiff's financial support of the Cemetery Company assisted it in pursuing its sales policy, the shareholders of the profit-making company benefited. This type of benefit was recognized in Rev.Rul. 64-217, supra, where a perpetual care fund was declared an adjunct and denied an exemption as follows:
"* * * Furthermore, as the services and facilities furnished by a perpetual care fund to a cemetery operated for profit constitute substantial assistance in its business by affecting the salability and selling price of lots, and relieving the company itself of a legal or contractual obligation, net earnings of such funds inure to the benefit of the profit company or its shareholders. * * * [1964-2 Cum.Bull. at 154]."
The second factor which renders the exemption provided by the third clause of *688 Section 501(c)(13) inapplicable to plaintiff is the close relationship which existed between the perpetual care fund administered by the Association and the Cemetery Company. This nexus renders the tax status of the Association dependent upon that of the profit-making Cemetery Company. In Rosehill Cemetery Co. v. United States, supra, at page 25, it was stated:
"Where a fund is an adjunct to a nonprofit cemetery association, it is both logical and reasonable to attribute to it the exempt status of that association, but where, as here, such a fund is closely connected with a profit-making enterprise, there is no ground in logic or reason for allowing it an exemption from federal income taxation."
Arlington Memorial Park Association v. United States, supra, at pages 346-347, accepts and approves the rationale of Rev.Rul. 64-217, 1964-2 Cum.Bull. 153, that an association like that involved in the instant case can be so functionally related to a profit company that it must assume the taxable status of the profit oriented corporation. See also First National Bank v. United States, supra, at page 1121; Trustees of the Graceland Cemetery Improvement Fund v. United States, supra, at pages 770-771.
Since it has been determined that the plaintiff does not qualify for tax-exempt status under Section 501(c)(13) it is necessary to consider whether the perpetual care fund is taxable as a trust or instead as an association taxable as a corporation. Further, if it is found that the perpetual care fund is a trust for purposes of taxation, the Court must resolve the Association's claims, as trustee, to deductions on returns filed for the perpetual care fund to the extent of any sum distributed for the maintenance and care of Laurel Hill Cemetery. However, for the reasons given below the Court holds that the perpetual care fund is an association taxable as a corporation, which ruling obviates any claims by the Association that it is entitled to a distribution deduction under Section 651 of the Internal Revenue Code.
The Court recognizes that creation of an express trust occurs where the settlor manifests the intention to create a trust and that neither particular words nor a particular form of conduct is required to manifest an intention to create a trust. International Harvester Co. v. United States, 342 F.2d 432, 437, 169 Ct.Cl. 821 (1965). However, as stated in Treasury Regulation § 301-7701-4(a):
"Generally speaking, an agreement will be treated as a trust under the Internal Revenue Code if it can be shown that the purpose of the arrangement is to vest in trustees responsibility for the protection and conservation of property for beneficiaries who cannot share in the discharge of this responsibility and, therefore, are not associates in a joint enterprise for the conduct of business for profit."
The Articles of Agreement of the Association (Joint Exhibit II), dated July 23, 1923, disclose in paragraph fourteenth that the Board of Trustees of the Association is given the right and authority "to take and hold the title as such Board of Trustees to all property, real, personal or mixed, coming to the association, * * * and to hold, manage, invest and control all of the property, real, personal and mixed, belonging to the association."
Article XIII of the By-Laws of the Association (Joint Exhibit IV) provides that the affairs of the Association are to be managed by the Board of Trustees, the six members of which were elected for three-year terms at annual meetings by the lot owners as members of the Association. Since plaintiff has argued the lot owners of the Association are the beneficiaries of the purported trust, Article VIII would seem to vitiate the possibility of tax treatment as a trust by providing that the beneficiaries may share in the discharge of the duty of corpus protection and conservation through the election of those ultimately responsible for such protection and conservation.
Article XV of the By-Laws of the Association is entitled "Trust Fund" and states:
"Any property coming into the possession of the Laurel Hill Cemetery Association *689 by or through any gift, grant or bequest, or otherwise, in trust for any specific purpose, shall be kept as a separate and distinct fund and invested in safe and secure interest bearing investments of the following character, * *."
Though nominally establishing a trust fund, it appears that Article XV was not closely abided by, at least during the years Johnson and Maysack served as two of the trustees of the Association and as the owners of the Cemetery Company. In Powers v. Johnson, 306 S.W.2d 616, 621 (Mo.App. 1957), a class action by Laurel Hill Cemetery lot owners against Johnson and Maysack for deprivation of their "rights, interests and equities" in their burial properties, the St. Louis Court of Appeals determined that the Trustees of the Association had invested perpetual care funds contrary to the terms of the By-Laws and had also commingled the incomes of the Association with those of the Cemetery Company and Memorial. At page 622 of the Powers opinion, it was stated:
"The commingling of funds is established by Maysack's own testimony that all of the incomes of Laurel Hills [sic] Cemetery, whether of the Association or of the Corporation [Company], are put into one single bank account in the name of the Corporation; that the Association has no bank account of its own; that only one set of books is maintained; that the Association has no books of its own except an interment record; that the only book account showing how the Association stands with the Corporation is a ledger account in the books of the Corporation; that the only method of determining the financial position of the Association is from the general ledger account of the Corporation; that there is no book account of the Association showing its income and expenditures or showing what moneys have been turned over or received back from the Mutual Bank and Trust Company. Such records are only to be found in the books of the Corporation. Likewise, the records with respect to the employment of laborers by the Association are kept only in the books of the Corporation. The employees of the Corporation thus produce and keep the records of the Association."
It therefore develops that the perpetual care fund was not treated as a trust by those acting as Trustees of the Association. In fact, as noted earlier, the parties to that litigation stipulated that the agreement of July 23, 1923, between the trustees of Plymouth and the Association was indefinite with respect to the obligation of the parties thereto to maintain and care for the cemetery property. See Joint Exhibit XV. In July of 1946, an "Agency Agreement" was executed between the Association and the Mutual Bank and Trust Company of St. Louis whereby the bank acknowledged "to have received for and on behalf of the Association, the property shown on Schedule `A' hereto attached, and from and after the date of this agreement is holding said property subject to the terms hereof, acting solely as Custodian and Depository Agent for the Association."
The Stipulation of Facts filed by the parties to the present litigation discloses at paragraph (15) as follows:
"The Mutual Bank and Trust Company, or its successor corporation in case of a merger, during the years 1946 through August of 1966 acted as custodian of the perpetual care funds for the `Association.' It collected dividends and interest from the various assets and paid such income to the `Association' upon the directions of the Executive Committee of the `Association.'
Accordingly, the Stipulation of Fact and Joint Exhibits read together reveal that the perpetual care fund was placed in a custodial account during the years in issue. It was not until 1966 that the various property comprising the perpetual care fund was placed in trust. See Joint Exhibit XXVI, a trust indenture executed between the Association and the St. Louis County National Bank.
The Court has not failed to note the repeated references by the St. Louis Court *690 of Appeals in Powers v. Johnson, supra, to such phrases as "the trust funds" and "the trust indenture", as well as its treatment of the obligations of trustees, all of which tend to demonstrate that the court felt the perpetual care fund constituted a valid and effective, though poorly managed, trust. However, this Court does not feel bound by such a determination by the St. Louis Court of Appeals. The status of a particular entity under state law does not control a determination of whether that entity is subject to federal taxation. Scott v. Self, Acting Collector of Internal Revenue, 208 F.2d 125, 130-131 (8th Cir. 1953). See also Poplar Bluff Printing Co. v. Commissioner, 149 F.2d 1016, 1018 (8th Cir. 1945), where it is stated:
"The status of a particular entity under the state law is not controlling in determining whether it is subject to Federal tax. An unincorporated association, though a partnership under state law, may nevertheless be included within the term `corporation,' within the definition of the revenue law."
The final substantive issue on which the Court's attention must focus concerns the plaintiff's claims that the perpetual care fund is entitled to a deduction on each of the returns filed with the Service to the extent of any sum expended for the maintenance and care of Laurel Hill Cemetery under Section 162 of the Internal Revenue Code. Such deductions are said to be available to the perpetual care fund regardless of the Court's holding as to the status of the fund as trust or association taxable as a corporation. Section 162 provides in pertinent part:
"(a) In general.There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *."
The case law interpretations of Section 162(a) and its predecessors clearly indicate that the existence of a profit-making intent is a prerequisite to deductibility of expenses incurred in carrying on a trade or business. The taxpayer must demonstrate an intent to seek a profit. Bessenyey v. Commissioner, 379 F.2d 252, 256 (2nd Cir. 1967), cert. denied, 389 U.S. 931, 88 S.Ct. 293, 19 L.Ed.2d 283 (1967); International Trading Co. v. Commissioner, 275 F.2d 578, 584 (7th Cir. 1960); White v. Commissioner, 227 F.2d 779, 780 (6th Cir. 1955). To qualify for a Section 162(a) deduction the course of activity must be considered a "trade or business." It is the existence of a bona fide profit motive which is the most important criterion for finding that a course of activity is a "trade or business." Glimco v. Commissioner, 397 F.2d 537, 540 (7th Cir. 1968), cert. denied, 393 U.S. 981, 89 S.Ct. 452, 21 L.Ed.2d 442 (1968); Lamont v. Commissioner, 339 F.2d 377, 380 (2nd Cir. 1964).
In a recent opinion the Eighth Circuit Court of Appeals held that expenses which were incurred by a social club in the operation of its recreational programs at a loss were not "ordinary and necessary expenses" of carrying on a "trade or business" and thus were not deductible under Section 162(a) from the profits accruing to the club from its nonrecreational, profit-making activities. Five Lakes Outing Club v. United States, 468 F.2d 443 (8th Cir. 1972). There, at page 445, the Court stated:
"That question, of course, turns on whether a profit motive is a prerequisite to deductibility under § 162(a). For the reasons well stated by the Tax Court, and adopted by the Second Circuit, we agree that it is. See Adirondack League Club v. Commissioner of Internal Revenue, 55 T.C. [796] at 808-809, 815-819, aff'd, 458 F.2d 506."
This Court is, of course, bound by such ruling and finds that the fact that the Association is neither organized nor operated for profit prohibits its status as a "trade or business" and thus precludes any deductibility of expenses under Section 162(a).
Plaintiff argues that Trustees of the Graceland Cemetery Association Improvement Fund, supra, allows the deduction of expenses similar to those involved in the instant case under substantially similar facts. However, the Court observes that Graceland is factually distinguishable from *691 the case at bar. In Graceland, at page 778, the Court of Claims stated:
"As an adjunct to a profit-making cemetery company, the money paid by plaintiff is directly applied to cemetery care and expenses. The Improvement Fund supervises all of the care and maintenance work done and is directly billed for it by the Cemetery Company. The stipulated facts indicate that the amount charged by the plaintiff for this work is both fair and reasonable in the light of prices charged by other cemetery companies in the immediate area. Since plaintiff is charged by its Act of Incorporation with the preservation and maintenance of Graceland Cemetery, these expenditures are clearly within its mandated responsibilities, and, therefore, should be considered as valid trade and business expenses under section 162."
In the case at bar the parties have stipulated that it is unknown whether and in what amounts monies paid to the Cemetery Company were applied to expenses related to the care and maintenance of the cemetery property. Paragraphs (28) and (36) of the Stipulation of Facts. Further, as it is unknown what amounts, if any, were expended on cemetery care and maintenance, there can be no showing that the amounts charged were fair and reasonable. Therefore, the Association has not sustained its burden to show that it comes within the statutory provision allowing the deduction.
Finally, as shown by Joint Exhibit XV, from 1958 to the present time the Cemetery Company bore the primary responsibility and obligation of the care and maintenance of Laurel Hill Cemetery, thus in writing officially establishing what had formerly been the case in fact. See Stipulation of Facts, paragraph (31). This recognition of the Company's obligation of care and maintenance is opposed to the finding of Graceland that the association bore such obligation. It is the opinion of the Court that such distinctions negate the persuasive effect of Graceland. Accordingly, the Court follows the rule established by the Eighth Circuit Court of Appeals in Five Lakes Outing Club v. United States, supra, and holds that since the Association was neither organized nor operated for profit, it is not entitled to Section 162(a) ordinary and necessary business expense deductions.
Plaintiff has argued that defendant, in seeking to deny deductions on the income tax returns of the perpetual care fund for the income it paid over to the profit-oriented Cemetery Company for the maintenance and care of cemetery property, acts in opposition to well-established tax policy as formulated by positions it has taken in prior litigation. In light of those previous cases plaintiff characterizes the present position of defendant as "unduly harsh and unjust." It is argued that stipulations of fact and law filed in those previous cases should be received as evidence in the instant case and be given "substantial weight" by the Court.
The Court, however, does not regard prior tax policies formulated by the Internal Revenue Service as persuasive or substantial evidence of tax policy appropriate at the present. It is fundamental that the Commissioner may modify past practices to the disadvantage of present taxpayers if it is determined the former practice was incorrect. This action by the Commissioner may take place in the absence of an authoritative court decision and though it may result in the subjection of identical transactions occurring at different times to different tax treatment. Wagner v. United States, 387 F.2d 966, 968, 181 Ct.Cl. 807 (1967). In Sirbo Holdings, Inc. v. Commissioner, 509 F.2d 1220 (2 Cir. 1975), at page 1222, it was held:
"While even-handed treatment should be the Commissioner's goal, cf. International Business Machines Corp. v. United States, 343 F.2d 914, 170 Ct.Cl. 357 (1965), cert. denied, 382 U.S. 1028, 86 S.Ct. 647, 15 L.Ed.2d 540 (1966), perfection in the administration of such vast responsibilities cannot be expected. See Davis, Administrative Law Treatise § 17.07, at 600 (1970 Supp.). The making of an error in one case, if error it was, gives other taxpayers no right to its perpetuation. See Wagner v. United States, 387 F.2d 966, *692 968, 181 Ct.Cl. 807 (1967). Cf. Snowden v. Hughes, 321 U.S. 1, 15, 64 S.Ct. 397, 88 L.Ed. 497 (1944) (concurring opinion of Mr. Justice Frankfurter)."
Accordingly, for the above reasons judgment will be entered in favor of the defendant and against plaintiff.
The Court adopts this memorandum opinion and the joint stipulation of facts filed by the parties as its findings of fact, and this memorandum opinion as its conclusions of law, and the clerk of the Court is directed to prepare and enter the proper judgment for the defendant in accordance with the Court's findings herein.